| | |
|---|---|
| 1 | **MARLIN & SALTZMAN, LLP** |
| 2 | Stanley D. Saltzman, Esq. (SBN 90058)<br>Tatiana G. Avakian, Esq. (SBN 298970) |
| 3 | 29800 Agoura Road, Suite 210<br>Agoura Hills, California 91301 |
| 4 | Telephone: (818) 991-8080<br>Facsimile: (818) 991-8081 |
| 5 | ssaltzman@marlinsaltzman.com<br>tavakian@marlinsaltzman.com |
| 6 | |
| 7 | **TOJARIEH LAW FIRM, PC**<br>Joseph Tojarieh, Esq. (SBN 265492) |
| 8 | 10250 Constellation Boulevard, Suite 100<br>Los Angeles, California 90067 |
| 9 | Telephone: (310) 553-5533<br>Facsimile: (310) 553-5536 |
| 10 | jft@tojariehlaw.com |
| 11 | *Attorneys for Plaintiff Bryant Patton, individually and on behalf of all others similarly situated* |
| 12 | |
| 13 | *(Counsel Continued on Next Page)* |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT PATTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDWEST CONSTRUCTION SERVICES, INC. dba TRILLIUM CONSTRUCTION/DRIVERS, a California corporation; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.: 2:19-cv-08580-JFW-MAA<br><br><u>CLASS ACTION</u><br><br>[Assigned for all purposes to the Hon. John F. Walter, Courtroom 7A]<br><br>**JOINT STATEMENT RE: LOCAL RULE 7-3 CONFERENCES**<br><br>Complaint Filed: August 14, 2019<br>Trial Date: None Set |

1  **MEDINA MCKELVEY LLP**
    Brandon R. McKelvey (SBN 217002)
2   Allison S. Hyatt (SBN 217567)
    Timothy B. Nelson (SBN 235279)
3   925 Highland Pointe Drive, Suite 300
    Roseville, California 95678
4   Telephone:  (916) 960-2211
    Facsimile:   (916) 742-5488
5   brandon@medinamckelvey.com
    allison@medinamckelvey.com
6   tim@medinamckelvey.com

7   *Attorneys for Defendant Midwest Construction Services, Inc.*
    *dba Trillium Driver Solutions*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff BRYANT PATTON ("Plaintiff"), on behalf of himself and all others similarly situated, and Defendant MIDWEST CONSTRUCTION SERVICES, INC. dba TRILLIUM DRIVER SOLUTIONS ("Defendant") (collectively referred to as "the Parties"), hereby submit this Joint Statement regarding their Local Rule 7-3 conferences pursuant to this Court's Standing Order, Paragraph 5(b):

### I.  Background

On August 14, 2019, Plaintiff, on behalf of himself and all others similarly situated, filed his Complaint against Defendant in the Los Angeles County Superior Court, Case No. 19STCV28353. (Dkt. #1-1). On October 4, 2019, Defendant removed the action to this Court. (Dkt. #1). Defendant's Notice of Removal is based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(c), (d)(2), and contends that there is minimal diversity, there are over 100 potential class members, and the amount in controversy exceeds $5,000,000.00. Plaintiff disputes that this Court has subject matter jurisdiction and contends that Defendant has not satisfied, by a preponderance of the evidence, the $5,000,000.00 amount in controversy under CAFA.

The parties attended mediation on May 27, 2020.  The parties mediated the case with Francis "Tripper" Ortman, one of the top employment law mediators in California.  Both sides participated in the mediation in good faith, and the parties exchanged extensive information and documents prior to mediation.  Prior to mediation, Defendant's counsel produced the most current information related to the total number of employees in the putative class, the total number of workweeks, and payroll information.  In addition, Defendant produced a sample of time records along with a document production as requested by Plaintiff.

### II.  Local Rule 7-3 Conferences

Counsel for the Parties have held multiple meet and confer conferences

regarding Plaintiff's intended Motion to Remand, with the most recent telephonic meet and confer conference held on February 24, 2021. Below is a summary of each of the meet and confer discussions, in chronological order.

On October 9, 2019, Plaintiff's counsel notified Defendant's counsel of their intent to file a Motion to Remand. Plaintiff's counsel sent a meet and confer letter to defense counsel on October 11, 2019, which set forth Plaintiff's reasons that Defendant did not satisfy the amount in controversy requirement under CAFA by a preponderance of the evidence. Plaintiff's counsel also invited defense counsel to meet and confer by telephone (as counsels' offices are in two different counties).

Counsel met and conferred by telephone on October 17, 2019 and further, on October 30, 2019. The October 17, 2019 meet and confer call lasted for approximately thirty minutes, with the call starting at approximately 10:30 a.m. Tatiana Avakian of Marlin & Saltzman, LLP and Joseph Tojarieh of Tojarieh Law Firm, PC participated on behalf of Plaintiff. Lead counsel Brandon McKelvey and counsel Timothy Nelson of Medina McKelvey LLP participated on behalf of Defendant.

During the meet and confer call, Plaintiff's counsel raised the following points:

- Defendant's assumptions of the 100% violation rate and 25% violation rate to calculate the amount in controversy are purely speculative and not supported by "summary-judgment-type evidence." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Garcia v. Wal-Mart Stores*, 207 F. Supp. 3d 1114, 1119 (C.D. Cal. 2016). Specifically, allegations in the Complaint that Defendant engaged in a "pattern and practice" of doing something does not support such violation rates, and does not mean that Defendant engaged in wage-and-hour violations during each and every shift within the class period.

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Plaintiff also discussed that with the (at that time) recent decision of *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019), the Ninth Circuit did not reach a conclusion with respect to whether the use of a 100% violation is reasonable. Rather, the Court merely found that a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied. *Id.*, at 924.

- Plaintiff's counsel cited to several allegations in the Complaint where Plaintiff and the putative Class "were often not" permitted to take compliant meal and/or rest periods, and "on those occasions when" Plaintiff and the putative Class did not receive compliant meal and rest periods, they were not paid one hour of pay at their regular rate of compensation, pursuant to Labor Code § 226.7. Plaintiff explained that these allegations suggest that violations did not occur on a daily basis to support the 100% violation rate or 25% violation rate on which Defendant relied in making its calculations.

- Plaintiff's counsel also discussed that several cases in the Ninth Circuit, including this Court, have repeatedly rejected the use of a 100% violation rate when calculating the amount in controversy for CAFA even though the complaints included allegations of "pattern and practice" or that defendants maintained a "uniform administration of corporate policy."

- Further, Plaintiff's counsel discussed that the declaration on which Defendant relied in support of its Notice of Removal inflated several figures. By example, Plaintiff's counsel discussed that the declaration used the "number of recorded hours" that was reported in Defendant's

Crystal Report Writer system to calculate the total number of workdays (which was then used to calculate damages), when it was unclear whether the "number of recorded hours" also included sick time, vacation time, and other types of leave. If so, then the total number of workdays calculated (and thus, the total damages) was not accurate. As another example, Plaintiff discussed that the calculation of payments under Labor Code § 226.7 as a result of employees not receiving compliant meal and rest periods was incorrect in that Defendant did not calculate damages based on eligible rest period shifts (i.e., shifts of 3.5 hours or more) and eligible meal period shifts (i.e., shifts of 5 hours or more).

- Plaintiff's counsel also discussed that, without providing evidence, Defendant assumed that the average number of hours worked by the putative Class was eight hours per day. The declaration did not provide that this average was based on a review of the payroll and time records.

- Further, Plaintiff's counsel discussed that Defendant did not provide any evidence for calculating unpaid overtime and minimum wages at 0.25 hours each per workday per putative class member.

- Plaintiff's counsel also discussed that Defendant did not provide any reasonable basis for calculating attorneys' fees at 25% of the total amount in controversy, and emphasized that " '[t]he defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence.' " *Arias*, 936 F.3d at 927-28, citing to *Fritsch v. Swift Transportation Co.*, 899 F.3d 785, 788 (9th Cir. 2018). Further, Defendant improperly calculated attorneys' fees on claims where attorneys' fees are not recoverable, such as on Plaintiff's

meal and rest period claims, thereby further inflating the total amount in controversy.

Defendant's counsel responded with the following points:

- Defendant's counsel discussed that allegations of "uniform policies and practices," as well as allegations of "pattern and practice of policies" support the use of 25% or 100% violation rates as reasonable assumptions. Defendant's counsel also discussed that the *Arias* case supports Defendant making reasonable assumptions to calculate the amount in controversy.
- With respect to information set forth in the declaration used to calculate the amount in controversy, Defendant's counsel indicated that those issues can be remedied in a supplemental declaration. Defendant's counsel's understanding was that the numbers of recorded hours provided in the declaration did not include vacation, sick time, or other similar time off. Defendant's counsel also stated that there were few circumstances where drivers were working shifts less than an eligible meal or rest period shift. Defendant's counsel indicated that, because they were dealing with hard copy manual time sheets, it was not easy to obtain specific numbers regarding average work hours per shift.
- Defendant's counsel argued that Defendant had satisfied its burden for purposes of filing a notice of removal, and that summary judgment type evidence was not required to file a notice of removal, but Defendant was nonetheless willing to provide a supplemental declaration that would address the concerns that Plaintiff's counsel had raised during the meet and confer process.

The October 30, 2019 further meet and confer call lasted for

approximately 15 minutes, with the call starting at approximately 1:00 p.m. Lead counsel Stanley Saltzman and counsel Tatiana G. Avakian of Marlin & Saltzman, LLP participated on behalf of Plaintiff. Lead counsel Brandon McKelvey and counsel Timothy Nelson of Medina McKelvey LLP participated on behalf of Defendant. The connection during this call was poor, which resulted in the call ending earlier than the prior meet and confer call. During the follow-up meet and confer call, defense counsel discussed that they were agreeable to providing a supplemental declaration, in support of Defendant's Notice of Removal, in an effort to address some of the deficiencies that Plaintiff's counsel pointed out, such as the lack of information regarding the number of shifts eligible for meal breaks, rest breaks, and overtime. Plaintiff's counsel agreed to review the supplemental declaration, upon receipt, and to assess whether a motion to remand was still necessary.

Thereafter, the Parties discussed scheduling private mediation and stipulated to staying this action, pending the Ninth Circuit's decision in *Intl Brotherhood of Teamsters, et al v. FMCSA*, Case Number 18-73488; *IBT, et al. v. FMCSA*, Case Number 19-70323; *Labor Commissioner State of CA v. FMCSA*, Case Number 19-70329; *Duy Ly, et al. v. FMCSA*, Case Number 19-70413. (Dkt. #29). On December 16, 2019, this Court stayed this action until 30 days after the Ninth Circuit's decision. (Dkt. #30). The Ninth Circuit issued its decision on January 15, 2021 in *International Brotherhood of Teamsters, Local 2785 v. Federal Motor Carrier Safety Administration*, 986 F.3d 841 (9th Cir. 2021) ("*Teamsters*"). As such, the stay in this action was lifted on February 16, 2021 (the next court day following 30 days).

On January 22, 2021, Plaintiff's counsel contacted defense counsel, to follow-up on the status of the supplemental declaration in support of Defendant's Notice of Removal, and requested that the declaration be provided to Plaintiff's counsel

by February 1, 2021. Defendant's counsel provided the supplemental declaration on February 1, 2021.

After taking the opportunity to review the supplemental declaration, Plaintiff's counsel sent a further meet and confer letter to defense counsel on February 17, 2021, the contents of which were discussed during the Parties' further telephonic meet and confer conference, held on February 24, 2021.

The February 24, 2021 further meet and confer call lasted for approximately 30 minutes, with the call starting at approximately 4:00 p.m. Lead counsel Stanley Saltzman and counsels Tatiana G. Avakian and Marissa A. Mayhood of Marlin & Saltzman, LLP participated on behalf of Plaintiff. Lead counsel Brandon McKelvey and counsel Timothy Nelson of Medina McKelvey LLP participated on behalf of Defendant.

During the February 24, 2021 call, Plaintiff's counsel made the following points:

- The supplemental declaration created new concerns, in that it relied on a "sample" size of only 100 timesheets for the putative class members, in order to calculate the estimated amount-in-controversy for purposes of CAFA. Plaintiff's counsel explained that the "sample" size was unreliable, because: the supplemental declaration did not disclose what qualifications, if any, the declarant or others who selected the 100 timesheets had in selecting a sample size; the total number of putative class members involved in the "sample"; the years in the class period to which the "sample" pertained; the number of Defendant's clients that fell within the "sample," where the putative class members were assigned; or a discussion about the confidence level and margin of error. As a result, Defendant had not presented "competent proof," as it is required to do in order to satisfy its burden by a preponderance of

JOINT STATEMENT RE: LOCAL RULE 7-3 CONFERENCES
- 9 -

Case 2:19-cv-08580-JFW-MAA   Document 33   Filed 03/01/21   Page 10 of 15   Page ID #:500

the evidence. "When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with 'competent proof' ... under the same evidentiary standard that governs in the summary judgment context.' " *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); underline added); *see also Harris v. KMI Industrial, Inc.*, 980 F. 3d 694, 700 (9th Cir. 2020) ("[a] factual attack … need only challenge the truth of the defendant's jurisdictional allegations *by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence*; emphasis added.)

- Plaintiff's counsel further explained that Defendant still had not presented any evidence, supported on reasonable grounds, regarding calculating the claims at a 100% violation rate. In fact, and Plaintiff's counsel pointed out, the most recent information in the supplemental declaration pointed out that only 60.5% of the shifts (based on the 100 timesheets reviewed) were eligible for overtime, yet Defendant calculated unpaid overtime wages at a 100% violation rate.
- Plaintiff's counsel further discussed that, even under Defendant's alternate theory of a 25% violation rate for calculating the damages, with the new numbers provided for the number of workdays and the number of timesheets, the amount-in-controversy was less than $5,000,000.

In response, Defense counsel raised the following arguments:

- The 100 timesheets consisted of 25 timesheets for each of the following years: 2016, 2017, 2018, and 2019. It also consisted of timesheets for 83 employees. However, defense counsel did not know how many of Defendant's clients, to which the putative class members were assigned

JOINT STATEMENT RE: LOCAL RULE 7-3 CONFERENCES
- 10 -

to work, were represented in the 100 timesheets, and Defendant's counsel agreed to provide that number. Defense counsel provided a sample of 100 time sheets in informal discovery, and relied on a sample of 100 time sheets when calculating the amount in controversy, because Defendant used hard copy time sheets for its drivers during the putative class period, and there is no electronic data showing the punch times for each driver for each shift. These hard copy time sheets are in storage and Defendant must manually review them to gather any sort of sample. It is very difficult for Defendant to assemble and analyze these time sheets, especially during the limited time frame that Defendant had to prepare its notice of removal.

- Defense counsel also discussed that the change in the number of wage statements, as reflected in the supplemental declaration, was due to a calculation error. The reduction to the number of workdays was due to an increase in the average number of hours worked per day based upon a review of the sample of 100 time sheets described in the supplemental declaration.

- Defense counsel discussed that although it included the calculations for the amount in controversy assuming a 100% violation rate in its notice of removal, that it did not intend to rely on a 100% violation rate in opposing a motion to remand. Defense counsel explained that even using a lower 25% violation rate, meaning 25% of the shifts at issue had the violations that Plaintiff assumes, the amount in controversy requirement was still satisfied. Defense counsel explained that it provided a range of violation rates from 25% to 100%, and even using the lower 25% violation rate, the amount in controversy was still satisfied here.

- Defense counsel further discussed that, even if the violation rate of 25% was used, the waiting time penalties calculations in the notice of removal would still apply to 100% of the former employees and 100% of the wage statements in the applicable period because the 25% violation rate applies to the number of shifts, not the number of employees. In other words, even if the violation rate for unpaid wages and noncompliant meal and rest breaks was 25% of shifts, this would mean that all former employees could be entitled to waiting time penalties and all wage statements could be inaccurate. As a result, under this alternate theory, even with the change in the number of wage statements and number of workdays, defense counsel stated that Defendant would more than satisfy the amount-in-controversy requirement of $5,000,000.00..
- Defense counsel also conceded that Defendant would not rely on the initial number of workdays and number of timesheets that were used to calculate the amount-in-controversy for its Notice of Removal.
- With respect to the 100% violation rate, defense counsel stated that, while the allegations in Plaintiff's complaint generally were pled in a way to avoid some language that courts have found to support a 100% violation rate, Defendant would not need to show a 100% violation rate in order to satisfy the amount-in-controversy. As explained above, Defense counsel explained that even assuming a 25% violation rate, the amount in controversy is still met here.

Counsel for the Parties made a few additional points:
- Plaintiff's counsel stated that, even with the additional information provided regarding the "sample" of timesheets, the "sample" size was not reasonable or reliable, in that it appeared to be only for about 8%

of the putative class members. Defense counsel asked whether increasing the number of timesheets would resolve this concern. Plaintiff's counsel responded that, given the other concerns with respect to whether the violation rates being used were reasonable, and supported by competent evidence, it did not appear that a larger sample size would alleviate Plaintiff's concerns.

- Defense counsel also stated that they could provide a breakdown of the updated calculations regarding the amount in controversy based on the revised numbers for workdays and wage statements in the supplemental declaration, to show that the amount-in-controversy still exceeded $5,000,000.00, even using a 25% violation rate. Plaintiff's counsel responded that Defendant would still need to show evidence in support of the violation rates used, in order to meet its burden. And, as Plaintiff's counsel pointed out earlier in the meet and confer call, even under a 25% violation rate, Defendant would not satisfy the $5,000,000 amount-in-controversy, with the revised numbers.

### III. Unresolved Issues

The Parties were unable to resolve the issues raised by Plaintiff. Accordingly, the issue of whether Defendant has satisfied the amount in controversy for CAFA by a preponderance of evidence remains unresolved.

Dated: March 1, 2021  **MARLIN & SALTZMAN, LLP**
**TOJARIEH LAW FIRM, PC**

By: ‌/s/ Tatiana G. Avakian‌
    Stanley D. Saltzman, Esq.
    Tatiana G. Avakian, Esq.
    Attorneys for Plaintiff and the Class

Dated: March 1, 2021        MEDINA McKELVEY LLP

By:  /s/ Timothy B. Nelson
     Brandon R. McKelvey, Esq.
     Allison S. Hyatt, Esq.
     Timothy B. Nelson, Esq.
     Attorneys for Defendant MIDWEST CONSTRUCTION SERVICES, INC. dba TRILLIUM DRIVER SOLUTIONS

### SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4, I, Tatiana G. Avakian, hereby attest that all other signatories to this Joint Statement, and on whose behalf it is submitted, concur in its content and have authorized its filing.

Dated:  March 1, 2021        **MARLIN & SALTZMAN, LLP**
                                          **TOJARIEH LAW FIRM, PC**

By:  /s/ Tatiana G. Avakian
     Stanley D. Saltzman, Esq.
     Tatiana G. Avakian, Esq.
     Attorneys for Plaintiff and the Class

# CERTIFICATE OF SERVICE

I, Tatiana G. Avakian, an attorney, certify that I caused the foregoing document to be served on all counsel of record in this action via the Court's CM/ECF system on March 1, 2021.

By: */s/ Tatiana G. Avakian*
Tatiana G. Avakian, Esq.
*Attorney for Plaintiff and the putative Class*