# EXHIBIT 2

## TO THE DECLARATION OF TATIANA G. AVAKIAN ISO PLAINTIFF'S MOTION TO REMAND

Brandon R. McKelvey (CA Bar No. 217002)
  Email: brandon@medinamckelvey.com
Allison S. Hyatt (CA Bar No. 217567)
  Email: allison@medinamckelvey.com
Timothy B. Nelson (CA Bar No. 235279)
  Email: tim@medinamckelvey.com
MEDINA McKELVEY LLP
925 Highland Pointe Drive, Suite 300
Roseville, California 95678
Telephone:  (916) 960-2211
Facsimile:   (916) 742-5488

Counsel for Defendant MIDWEST CONSTRUCTION SERVICES, INC. dba TRILLIUM CONSTRUCTION/DRIVERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT PATTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDWEST CONSTRUCTION SERVICES, INC. DBA TRILLIUM CONSTRUCTION/DRIVERS, a California corporation, and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.: 2:19-CV-08580-JFW-MAA<br><br>**DECLARATION OF TIMM STURGEON IN SUPPORT OF MIDWEST CONSTRUCTION SERVICES, INC. DBA TRILLIUM CONSTRUCTION/DRIVERS'S OPPOSITION TO MOTION TO REMAND**<br><br>Trial Date:    Not Yet Assigned<br>Action Filed: August 14, 2019 |

I, Timm Sturgeon, hereby declare and state as follows

1. I have personal knowledge of the facts contained in this declaration and, if called as a witness, I could and would testify as to their accuracy.

2. I am currently employed by Midwest Construction Services, Inc. ("Midwest") as the President, Secretary and Treasurer. In this capacity, I am familiar with Midwest's corporate structure. Midwest is a corporation that was incorporated in Iowa in 1998. Midwest has its principal place of business in Kalamazoo, Michigan. This is where Midwest has its corporate offices and where its officers direct, control, and coordinate Midwest's activities.

3. When Midwest incorporated in Iowa in 1998, it was assigned a federal employer identification number ("FEIN"). Midwest has operated under that FEIN since 1998 and has never obtained a different FEIN for any other entities. Plaintiff Bryant Patton ("Plaintiff") was employed by the Midwest corporation that is incorporated in Iowa with the corresponding FEIN.

4. As the President, Secretary and Treasurer for Midwest, I also have access to work files and pay data regarding workers placed by Midwest in California on temporary assignments as truck drivers, including the number of workers placed, the pay rates for these workers, and the number of pay periods worked by these workers.

5. I have personally reviewed Plaintiff's file, which includes information that he submitted to Midwest prior to and during his temporary assignments. His file shows that he has, without exception, listed a California address as his current address.

6. I understand that the Complaint in this lawsuit alleges certain wage and hour violations occurred in California during the period from August 14, 2015 to the present ("the relevant period"). I also understand that Plaintiff seeks to represent a class of workers defined in the Complaint as "[a]ll persons who at any

///

time during the Class Period performed work for Defendant as truck drivers in the State of California" ("putative class members").

7. In order to prepare this declaration, I reviewed data on Midwest's computer system called Crystal Report Writer. Crystal Report Writer contains data identifying when temporary workers were placed for temporary assignments in California, what they were paid, and the number of hours that the temporary workers recorded as work time, meaning the time that they recorded that they were actually working. At the direction of our legal counsel and with my permission, various reports were run through the Crystal Report Writer system to determine (1) the number of potential class members (as defined in Plaintiff's complaint) from August 14, 2015 to September 6, 2019 (the date of the last pay period when the data was pulled), and (2) the number of hours that these workers recorded as work time during this period (which excluded time for vacation, paid time off, sick time, etc.). These reports only included non-exempt, hourly workers who worked as truck drivers. I reviewed the reports and the results of the reports to make sure they were properly run and contained true and accurate information. Based on my review of the Crystal Report Writer reports, I was able to determine that there were at least 1,061 non-exempt, hourly workers who worked as truck drivers in California that fit Plaintiff's alleged class definition from August 14, 2015 to September 6, 2019.

8. At the direction of our legal counsel and with my permission, reports were also run from Midwest's Crystal Report Writer system to determine the number of hours that the potential class members worked from August 14, 2015 to September 6, 2019. These reports revealed a total of 865,286.40 hours worked by the potential class members from August 14, 2015 to September 6, 2019. The amount of hours worked only included hours that the potential class members actually worked and did not include hours for vacation, paid time off, sick time, etc.

9. The Crystal Report Writer System does not contain information regarding the number of hours that the potential class members worked on a daily

basis. Instead, the payroll department manually inputs the weekly hours a potential class member worked from the potential class member's time sheets. Therefore, the only way to determine the number of hours that a potential class member worked on a particular day is to manually review that potential class member's time sheet. There are tens of thousands of time sheets during the potential class period. To arrive at the number of workdays, I had staff gather and review a random sample of 100 time sheets from potential class members during the potential class period. From these 100 time sheets, we determined that the average number of hours worked per day was 9.14 hours. Therefore, to calculate the number of workdays, we took the total number of hours worked (865,286.40 hours) and divided this by the average number of hours worked per day from our review of the random sample of time sheets (9.14 hours). This amounted to 94,670.3 workdays. I reviewed these reports and the queries and analysis run on these reports and I believe these numbers are a true and accurate reflection of the data in Crystal Report Writer.

10. At the direction of our legal counsel and with my permission, Crystal Report Writer data was also analyzed to determine a weighted average hourly rate for all potential class members during the relevant time period. This analysis was performed by calculating the total number of recorded work hours for each potential class member (meaning the hours that the potential class member actually worked and excluding time for vacation, paid time off, sick time, etc.) from August 14, 2015 to September 6, 2019, multiplied by each potential class member's hourly rate, and then divided by the total number or recorded work hours, which allowed us to calculate the weighted average. The weighted average hourly rate based on the analysis of Crystal Report Writer data was $22.16 per hour. The analysis did not include any additional payments in the calculations, other than the base hourly rate. I reviewed these reports and the queries and analysis run on these reports and I believe these numbers are a true and accurate reflection of the data in Crystal

Report Writer.

11. In addition, my staff analyzed the random sample of 100 time sheets from the potential class period to determine the number of days where the hours worked exceeded 3.5 hours, 5 hours, and 8 hours. These 100 time sheets contained a total of 418 workdays. Of these 418 workdays, 415 workdays had more than 3.5 hours of worktime recorded (99.3%), 413 workdays had more than 5 hours of worktime recorded (98.8%), and 253 of these workdays had more than 8 hours of worktime recorded (60.5%).

12. My understanding is that Plaintiff's Complaint alleges he is "separated from" Midwest as a Midwest worker. Plaintiff's temporary assignment ended on or about February 2019 and he has not been placed in a temporary assignment since then. To determine the number of potential class members who Plaintiff alleges are like him and are "separated from" Midwest, Crystal Report Writer data was analyzed at the direction of our legal counsel and with my permission to identify the number of potential class members whose temporary assignments ended between August 14, 2016 and August 14, 2019, meaning they worked for Midwest at some point after August 14, 2016, but did not have any assignments with Midwest after July 14, 2019 (more than 30 days before the Complaint was filed). The analysis revealed that there were at least 720 potential class members whose temporary assignments ended from August 14, 2016 to August 14, 2019. These 720 potential class members were typically scheduled for shifts of at least 8 hours during the relevant time period. I reviewed these reports and the queries and analysis run on these reports and I believe these numbers are a true and accurate reflection of the data in Crystal Report Writer.

13. As part of preparing this declaration, my staff reviewed the prior reports that were run from Crystal Report Writer to verify the number of wage statements that Midwest provided to truck drivers in California from August 14, 2018 to September 6, 2019. This was done to verify the numbers that were

provided in my prior declaration.  Workers placed in temporary assignments by Midwest, are paid on a weekly basis, with pay days every Friday.  Between August 14, 2018 and September 6, 2019, each potential class member would have received, at the time of payment, an itemized statement that contained the hours worked, the rates of pay, and other items of information.  There were approximately 460 potential class members from August 14, 2018 to September 6, 2019, who worked a total of approximately 7,218 pay periods cumulatively during this period and therefore received approximately 7,218 wage statements during this period.  These numbers are lower than my previous declaration due to a calculation error that was discovered during the preparation of this declaration.  I reviewed these reports and the queries and analysis run on these reports and I believe these numbers are a true and accurate reflection of the data in Crystal Report Writer.

      I declare under penalty of perjury under the laws of the United States and the laws of the State of California that the foregoing is true and correct.

      Executed this __1__ day of February 2021, at ___Kalamazoo___, __Michigan__.

*/s/ Timm Sturgeon*
TIMM STURGEON

- 6 -

DECL. OF TIMM STURGEON IN SUPPORT OF MIDWEST CONSTRUCTION SERVICES, INC. DBA TRILLIUM CONSTRUCTION/DRIVERS'S NOTICE OF REMOVAL
CASE NO.: TBD