1   Brandon R. McKelvey (CA Bar No. 217002)
    Email: brandon@medinamckelvey.com
2   Timothy B. Nelson (CA Bar No. 235279)
    Email: tim@medinamckelvey.com
3   Kyle W. Owen (CA Bar No. 326335)
    Email: kyle@medinamckelvey.com
4   MEDINA McKELVEY LLP
5   925 Highland Pointe Drive, Suite 300
    Roseville, California 95678
6   Telephone:  (916) 960-2211
    Facsimile:   (916) 742-5488
7
8   Counsel for Defendant MIDWEST
    CONSTRUCTION SERVICES, INC. dba
9   TRILLIUM CONSTRUCTION/DRIVERS

10

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| BRYANT PATTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDWEST CONSTRUCTION SERVICES, INC. DBA TRILLIUM CONSTRUCTION/DRIVERS, a California corporation, and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 2:19-cv-08580-JFW-MAA<br><br>**DEFENDANT MIDWEST CONSTRUCTION SERVICES, INC. dba TRILLIUM CONSTRUCTION/DRIVERS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:          April 12, 2021<br>Time:          1:30 pm<br>Courtroom:  7A<br><br>Action Filed:  August 14, 2019<br>Trial Date:     Not Set |

# TABLE OF CONTENTS

Page

I.   SUMMARY OF OPPOSITION.................................................................. 8

II.   ARGUMENT ........................................................................................ 11

    A.   The Central District Has Repeatedly Rejected Similar Arguments for Remand in Other Cases with Virtually Identical Complaints ..... 11

    B.   Plaintiff Misrepresents the Evidentiary Burden That Midwest Must Meet for Removal .................................................................... 12

        1.   The Amount in Controversy for CAFA Jurisdiction Need Not Be Proven by Detailed Evidence ...................................... 13

        2.   Plaintiff Alleged No Facts Limiting the Scope or the Frequency of the Alleged Legal Violations, and Thus Midwest's Assumed Violation Rates Are Appropriate .......... 15

        3.   The Law Permits Midwest to Base Removal on Reasonable Estimates of the Amount in Controversy ........... 19

    C.   Midwest Adequately Established in Its Notice of Removal That the Amount in Controversy for the Putative Class Exceeds $5 Million ............................................................................................ 21

        1.   Midwest's Meal and Rest Break Removal Calculations Are Supported by Plaintiff's Allegations and Extrinsic Evidence ................................................................................. 21

        2.   Midwest's Removal Calculations on Unpaid Overtime Are Proper.................................................................................... 22

        3.   Midwest's Minimum Wage Removal Calculations Are Proper.................................................................................... 24

        4.   Midwest's Waiting Time Removal Calculations Are Proper.................................................................................... 24

        5.   Midwest's Wage Statement Removal Calculations Are Proper.................................................................................... 25

        6.   This Court Must Include Attorneys' Fees to Calculate the Amount in Controversy ......................................................... 26

        7.   Midwest Has Shown That the Amount in Controversy in the Aggregate Easily Exceeds $5 Million .............................. 28

        8.   Even If the Assumptions Plaintiff Suggests in His Motion Are Used, the Amount in Controversy in the Aggregate Still Exceeds $5 Million ......................................................... 29

III.   CONCLUSION .................................................................................... 31



# TABLE OF AUTHORITIES

<u>Cases</u>      <u>Page</u>

*Altamirano v. Shaw Indus., Inc.*,
No. C-13-0939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) ...................................................................................20

*Alvarez v. Office Depot, Inc.*,
No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *4 (C.D. Cal. Nov. 30, 2017)...............................................................11

*Anderson v. Starbucks Corp.*,
No. 3:20-CV-01178-JD, 2020 WL 7779015, at *3 (N.D. Cal. Dec. 31, 2020) ...............................................................9, 22

*Andrade v. Beacon Sales Acquisition, Inc.*,
No. CV 19-06963-CJC (RAOx), 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019).............................................................9

*Arias v. Residence Inn by Marriott*,
936 F.3d 920, 927 (9th Cir. 2019)......................................................10, 18

*Barbosa v. Transp. Drivers, Inc.*,
No. ED CV 15-1834-DMG (DTBx), 2015 WL 9272828, at *4 (C.D. Cal. Dec. 18, 2015).........................................................27

*Behrazfar v. UNISYS Corp.*,
687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009)..............................................18

*Bernal v. Serco, Inc.*,
No. SACV 20-1639-GW-SKx, 2020 WL 8461559, at *4 (C.D. Cal. Oct. 29, 2020)...............................................................10, 17, 21

*Brady v. Mercedes-Benz USA, Inc.*,
243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) ........................................27

*Branch v. PM Realty Group, L.P.*,
647 F. Appx. 743, 746 (9th Cir. 2016)......................................................21

*Bridges v. Dealers' Choice Truckaway Sys., Inc.*,
No. 2:20-CV-01620-ODW (SKx), 2020 WL 4937505, at *4–5 (C.D. Cal. Aug. 24, 2020) ...........................................................12, 17

*Bryan v. Wal-Mart Stores, Inc.*,
No. C 08-5221 SI, 2009 WL 440485, at *3 (N.D. Cal. Feb. 23, 2009) ....13

*Bryant v. NCR Corp.*,
284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018) ......................................8, 13

*Chabner v. United of Omaha Life Ins. Co.*,
225 F.3d 1042, 1046 n.3 (9th Cir. 2000)....................................................9

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA

**TABLE OF AUTHORITIES (cont.)**

<u>Cases (cont.)</u>                                                                          <u>Page</u>

*Coleman v. Estes Exp. Lines, Inc.,*
    631 F.3d 1010 (9th Cir. 2011)...................................................................25

*Coleman v. Estes Express Lines, Inc.,*
    730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010).........................................25

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
    574 U.S. 81, 88 (2014) ..............................................................................14

*Dobbs v. Wood Grp. PSN, Inc.,*
    201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016)....................................17–18

*Duberry v. J. Crew Grp., Inc.,*
    No. 2:14-CV-08810-SVW-MRW, 2015 WL 4575018, at *3–5 (C.D.
    Cal. July 28, 2015) ....................................................................................17

*Erami v. JPMorgan Chase Bank, N.A.,*
    No. CV 15-7728 PSG (PLAx), 2018 WL 6133654, at *8 (C.D. Cal.
    Mar. 5, 2018)..............................................................................................27

*Fritsch v. Swift Transp. Co. of Ariz.,*
    899 F.3d 785, 796 (9th Cir. 2018)............................................................27

*Franke v. Anderson Merchandisers LLC,*
    No. CV 17-3241 DSF (AFMx), 2017 WL 3224656, at *6 (C.D. Cal.
    July 28, 2017)............................................................................................12

*Garza v. Brinderson Constructors, Inc.,*
    178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) .............................................25

*Gonzalez v. Comenity Cap. Bank,*
    No. 1:19-CV-00342-AWI-EPG, 2019 WL 5304924, at *4 (E.D. Cal.
    Oct. 21, 2019)............................................................................................13

*Gutierrez v. Stericycle, Inc.,*
    2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017)................................27

*Hamilton v. Wal-Mart Stores, Inc.,*
    No. ED CV 17-01415-AB (KKx), 2017 WL 4355903, at *5 (C.D. Cal.
    Sept. 29, 2017)..........................................................................................27

*Harrington v. Mattel, Inc.,*
    No. C07-05110 MJJ, 2007 WL 4556920, at *4 n.4 (N.D. Cal. Dec. 20,
    2007) ..........................................................................................................16

*Harris v. KM Indus., Inc.,*
    980 F.3d 694, 699 (9th Cir. 2020)..............................................................8

*Holcomb v. Weiser Sec. Servs., Inc.,*
    424 F. Supp. 3d 840, 844 (C.D. Cal. 2019).....................................10, 17

- 4 -



1

**TABLE OF AUTHORITIES (cont.)**

2

<u>Cases (cont.)</u>                                                                                   <u>Page</u>

3    *Ibarra v. Manheim Invs., Inc.*,
         775 F.3d 1193, 1197 (9th Cir. 2015)..........................................9, 14, 17, 19

4    *Jaime v. Standard Parking Corp.*,

5        No. CV 08-4407 AHM (RZX), 2010 WL 2757165, at *2 (C.D. Cal.
         July 12, 2010)...................................................................................27

6    *Jimenez v. Allstate Ins. Co.*,

7        No. CV 10-8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal.
         Jan. 7, 2011) ...................................................................................18

8    *Kendall v. Nestle Waters N. Am., Inc.*,

9        No. 2:20-CV-10511-CAS-EX, 2021 WL 364639, at *4 (C.D. Cal.
         Feb. 1, 2021) .....................................................................................9

10   *Korn v. Polo Ralph Lauren Corp.*,

11       536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)..............................13, 26

12   *LaCross v. Knight Transportation, Inc.*,
         775 F.3d 1200, 1202 (9th Cir. 2015)...................................................17, 19

13   *Leos v. Fed. Exp. Corp.*,

14       No. 2:14-CV-02864-ODW, 2014 WL 2586866, at *7 (C.D. Cal. June
         10, 2014) .........................................................................................20

15

16   *Lopez v. First Student, Inc.*,
         427 F. Supp. 3d 1230, 1236 (C.D. Cal. 2019)....................................11, 13

17   *Lowdermilk v. U.S. Bank Nat'l Assoc.*,

18       479 F.3d 994 (9th Cir. 2007).....................................................................12

19   *Marano v. Liberty Mut. Grp., Inc.*,
         No. SACV 20-02215-CJC (ADSx), 2021 WL 129930, at *3 (C.D.

20       Cal. Jan. 14, 2021)......................................................................8, 11, 20

21   *Mejia v. DHL Express (USA), Inc.*,
         No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *6 (C.D. Cal. May

22       21, 2015) .........................................................................................12

23   *Navarro v. Servisair, LLC*,
         No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14,

24       2008) ...............................................................................................17

25   *Nolan v. Kayo Oil Co.*,
         No. C 11-00707 MEJ, 2011 WL 2650973, at *4 (N.D. Cal. July 6,

26       2011) ...............................................................................................23

27   *Oda v. Gucci Am., Inc.*,
         No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7,

28       2015) ...............................................................................................19

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA



**TABLE OF AUTHORITIES (cont.)**

<u>Cases (cont.)</u>                                                                                                   <u>Page</u>

*Pep Boys Overtime Actions*,
    No. CV 07-1755-VBF (RZX), 2008 WL 11343369, at *2 (C.D. Cal.
    Nov. 12, 2008)................................................................................................27

*Ray v. Nordstrom Inc.*,
    No. 2:11-CV-07277-JHN, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9,
    2011) ...............................................................................................23–24

*Rea v. Michaels Stores Inc.*,
    742 F.3d 1234, 1239 (9th Cir. 2014)..................................................23–24

*Ritenour v. Carrington Mortg. Servs. LLC*,
    228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017).........................................18

*Rodriguez v. AT & T Mobility Serv. LLC*,
    728 F.3d 975 (9th Cir. 2013)..............................................................12, 23

*Roth v. Comerica Bank*,
    799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010).........................................16

*Ruano v. Sears Roebuck & Co.*,
    No. CV 15-6060-PSG (FFMx), 2015 WL 6758130, at *4 (C.D. Cal.
    Nov. 5, 2015)..............................................................................................19

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398, 404 (9th Cir. 1996).......................................................8, 13

*Scott v. Cricket Commc'ns*, LLC,
    865 F.3d 189, 196 (4th Cir. 2017).............................................................31

*Scott v. Gate Gourmet, Inc.*,
    No. 2:20-cv-11033-CAS-JPRx, 2021 WL 677897, at *5 (C.D. Cal.
    Feb. 22, 2021) .....................................................................................8–9, 19

*Serrano v. Garfield Beach CVS, LLC*, No. CV 17-00506 BRO (DTBx), 2017
    WL 1960646, at *3 (C.D. Cal. May 11, 2017)...........................................9

*Singer v. State Farm Mut. Auto. Ins. Co.*,
    116 F.3d 373, 377 (9th Cir. 1997)............................................................14

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301, 1311 (9th Cir. 1990)........................................................27

*Steele v. W.W. Grainger, Inc.*,
    No. 13CV895 AJB (BGS), 2013 WL 2481476, at *5 (S.D. Cal. June
    10, 2013) ....................................................................................................29

*Stevenson v. Dollar Tree Stores, Inc.*,
    No. CIV S-11-1433 KJM, 2011 WL 4928753, at *5 (E.D. Cal. Oct.
    17, 2011) ....................................................................................................20

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA

**TABLE OF AUTHORITIES (cont.)**

<u>Cases (cont.)</u>                                                              <u>Page</u>

*Terrell v. Samuel*, Son & Co. (USA),
    No. EDCV20-00587-JGB-(KKx), 2020 WL 2797299, at *4 (C.D. Cal.
    May 29, 2020) ...........................................................................18

*Weight v. Active Network, Inc.*,
    29 F. Supp. 3d 1289, 1292 (S.D. Cal. 2014) ......................................15, 22

*Williams v. Costco Wholesale Corp.*,
    471 F.3d 975, 976 (9th Cir. 2006)....................................................15

*Willingham v. Morgan*,
    395 U.S. 402, 407 n. 3 (1969) .........................................................29

*Wilson v. Best Buy Co.*, Inc.,
    No. 2:10-cv-3136-GEB-KJN, 2011 WL 445848, at *2 (E. D. Cal. Feb.
    8, 2011) ....................................................................................23

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
    No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal.
    Mar. 3, 2015)............................................................................17

<u>Statutes</u>
28 U.S.C. § 1653 ...........................................................................30

California Labor Code § 226(e) ..........................................................26

Federal Rules of Civil Procedure 56(c)(1)(a) ........................................14

Senate Report No. 109-14 at 29, 43 (2005)..........................................14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA

# I.  <u>SUMMARY OF OPPOSITION</u>

Plaintiff Bryant Patton filed this putative class action lawsuit against his former employer, Midwest Construction Services, Inc. ("Midwest"), asserting eight of California's most costly wage and hour claims and seeking every damage and penalty imaginable on behalf of a class of over 1,000 employees for an over four-year period.  Plaintiff does not dispute that he is seeking well over $5 million dollars—the threshold amount for removal jurisdiction under the Class Action Fairness Act ("CAFA").  Instead, in his motion to remand, Plaintiff argues that removal is improper and this Court lacks jurisdiction because Midwest has not provided sufficient evidence—with the statistical precision to pass expert scrutiny—to prove that the amount in controversy is over the $5 million dollar threshold.

Courts in this district routinely reject CAFA jurisdictional challenges based on reasonable evidence refuting vague and conclusory allegations like the ones Plaintiff asserts here.  *See, e.g.*, *Marano v. Liberty Mut. Grp., Inc.*, No. SACV 20-02215-CJC (ADSx), 2021 WL 129930, at *3 (C.D. Cal. Jan. 14, 2021); (*See also* Compl., ECF No. 1-1.)  Despite this, Plaintiff attempts to use the cloak of "summary-judgment-type evidence" to defeat removal by distorting Midwest's evidentiary burden into one of statistical certainty more appropriate for trial than for jurisdictional inspection.  To defeat Plaintiff's factual challenge to Midwest's amount in controversy assertions, Midwest need only show that, by a preponderance of the evidence (*Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020)), it is more likely than not that the amount in controversy exceeds CAFA's jurisdictional threshold (*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).  This can be achieved through declaration testimony of a corporate officer explaining his inspection of company records and any calculations reached based on that inspection.  *Scott v. Gate Gourmet, Inc.*, No. 2:20-cv-11033-CAS-JPRx, 2021 WL 677897, at *5 (C.D. Cal. Feb. 22, 2021).  Midwest is *not*

- 8 -

required to present expert testimony or employ advanced statistical methodology to satisfy its burden. *Anderson v. Starbucks Corp.*, No. 3:20-CV-01178-JD, 2020 WL 7779015, at \*3 (N.D. Cal. Dec. 31, 2020). Requiring more would fly in the face of the Ninth Circuit's admonition that Congress "intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Midwest more than satisfies its evidentiary burden here. Timm Sturgeon—Midwest's President, Secretary, and Treasurer—presents credible testimony based on his thorough review of employee work files and pay information, and reaches reasonable calculations based on his review of those records. (Suppl. Declaration of Timm Sturgeon ("Suppl. Sturgeon Decl."), ¶ 4.) His calculations yield an amount in controversy range between $10,252,598.69–$14,746,679.95, well beyond the jurisdictional threshold. Mr. Sturgeon's testimony is informed by his experience and familiarity with Midwest's records, his thorough review and analysis of those records, and his reasonable calculations based on the same. CAFA demands nothing more to satisfy its amount in controversy threshold, and a host of courts have upheld CAFA jurisdiction based on similar evidence. *See, e.g.*, *Scott*, 2021 WL 677897, at \*5; *Kendall v. Nestle Waters N. Am., Inc.*, No. 2:20-CV-10511-CAS-EX, 2021 WL 364639, at \*4 (C.D. Cal. Feb. 1, 2021); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC (RAOx), 2019 WL 4855997, at \*4 (C.D. Cal. Oct. 1, 2019).

Plaintiff also argues that the vagueness of his Complaint[1] frustrates removal. The current standards for removal, however, allow a defendant to make reasonable

---

[1] The operative pleading for removal purposes is the original Complaint upon which Midwest timely removed. (*See* Complaint, Dkt. No. 1.) Plaintiff's later filed First Amended Complaint should not be considered for purposes of evaluating removal jurisdiction. *See Serrano v. Garfield Beach CVS, LLC*, No. CV 17-00506 BRO (DTBx), 2017 WL 1960646, at \*3 (C.D. Cal. May 11, 2017) ("The Court determines removability based on the operative complaint at the time of removal.") (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)).



assumptions based on vague and conclusory allegations designed by a plaintiff to avoid removal, such as those in Plaintiff's Complaint.  Rather than allege specific rates of harm, or even that Midwest deployed either a "pattern and practice" or a "uniform practice" of violative behavior, Plaintiff claims Midwest engaged in all of the above.  (*See, e.g.*, Compl., ¶¶ 8, 31 (alleging pattern and practice of violative policies), 22–23, 32 (alleging uniform and "enterprise-wide" practices).)  Although the degree of alleged pervasiveness can inform the reasonableness of an assumed violation rate—with "uniform practice" allegations justifying a 100% assumption, and "pattern and practice" allegations justifying between a 25%–60% violation rate—Plaintiff nonetheless attempts to undermine the viability of Midwest's assumptions by claiming that it pulled its assumptions out of thin air.

Despite Plaintiff's attempt to now minimize his sweeping conclusory allegations to avoid removal, Midwest's assumptions of between 100% *and* 25% reasonably, and conservatively, bookend the broad allegations in the Complaint at intervals that are widely accepted by courts in the Ninth Circuit.  *See Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 844 (C.D. Cal. 2019) (explaining that assumed 100% violation rate is reasonable under alleged "uniform practice"); *Bernal v. Serco, Inc.*, No. SACV 20-1639-GW-SKx, 2020 WL 8461559, at *4 (C.D. Cal. Oct. 29, 2020) ("[N]umerous courts have found violation rates between 25% and 60% are reasonable[]" under "pattern and practice" allegations).  The calculations reached using these assumptions are reasonable, more than sufficient to satisfy Midwest's evidentiary burden, and far exceed the $5 million threshold.

Plaintiff provides no persuasive legal arguments to rebut these calculations and assumptions or to suggest that the violation rates were beyond those frequently accepted by courts in the Ninth Circuit.  Instead, Plaintiff makes a failed attempt to require Midwest to research, state, and prove his claims for damages to invoke the Court's jurisdiction, but the law precludes imposing such a requirement on removal.  *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also*

- 10 -

*Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1236 (C.D. Cal. 2019) ("While Defendants bear the burden of establishing removal was proper, they need not prove Plaintiffs' case to do so.").

Midwest has easily satisfied its burden of proving that the amount in controversy more likely than not exceeds the jurisdictional threshold, and thus Plaintiff's Motion to Remand should be denied.

## II.   ARGUMENT

### A.   The Central District Has Repeatedly Rejected Similar Arguments for Remand in Other Cases with Virtually Identical Complaints.

In his Motion to Remand (ECF No. 34) (the "Motion"), Plaintiff ignores the broad allegations in his Complaint that repeatedly assert calculated, systematic policies and practices purposefully aimed at denying wages, overtime pay, meal and rest breaks, and wage statement information to Plaintiff and all members of the putative class during the entire proposed class period. Plaintiff attempts to minimize these allegations, while maximizing the vague and conclusory nature of his Complaint in order to avoid removal. While playing fast and loose with the allegations, Plaintiff suggests that to invoke federal jurisdiction under CAFA Midwest must conduct a nearly day-by-day, paycheck-by-paycheck review of the records of every putative class member (exceeding 1,000 individuals) over a four-year period. In other words, Plaintiff argues that a removing defendant, within the first days after being served with a complaint, must prove a plaintiff's class action claims in the notice of removal. This of course is not the standard and Plaintiff's suggestion that Midwest must prove Plaintiff's class claims in order to obtain access to federal court lacks legal support.

Courts in the Central District have rejected these same arguments from plaintiffs seeking remand of wage and hour putative class actions involving similar allegations. *See, e.g.*, *Marano*, 2021 WL 129930, at *3; *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *4 (C.D. Cal. Nov. 30, 2017);

- 11 -

*Bridges v. Dealers' Choice Truckaway Sys., Inc.*, No. 2:20-CV-01620-ODW (SKx), 2020 WL 4937505, at *4–5 (C.D. Cal. Aug. 24, 2020); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015); *Franke v. Anderson Merchandisers LLC*, No. CV 17-3241 DSF (AFMx), 2017 WL 3224656, at *6 (C.D. Cal. July 28, 2017).  In his Motion, Plaintiff has failed to set forth any legal or factual basis for this Court to depart from the conclusions reached in these cases.  The reasoning in these cases is sound, and Plaintiff's sweeping allegations are similar to the allegations made in those complaints.  Therefore, Plaintiff's unsupported arguments for remand should be rejected here as they were rejected in those cases.

### B.  Plaintiff Misrepresents the Evidentiary Burden That Midwest Must Meet for Removal.

A defendant seeking to remove a case to federal court, whether under CAFA or traditional diversity standards, need only show whether the amount of controversy has been satisfied by a "preponderance of the evidence."  *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 88 (2014); *accord Rodriguez v. AT & T Mobility Serv. LLC*, 728 F.3d 975 (9th Cir. 2013), *overturning Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007) (finding that "*Lowdermilk . . .* has been effectively overruled.  A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum.").

The arguments Plaintiff makes in his Motion to Remand and the evidence he claims is required to prove the amount in controversy goes far beyond the "preponderance of the evidence" standard and attempts to transport this case back in time to when the *Lowdermilk* standard ruled the day.  Midwest's Notice of Removal, the declaration supporting the Notice of Removal, and now the supplemental declaration in response to Plaintiff's Motion, easily satisfies the current preponderance of the evidence standard.

- 12 -

### 1.   The Amount in Controversy for CAFA Jurisdiction Need Not Be Proved by Detailed Evidence.

Throughout his Motion, Plaintiff suggests Midwest's evidence supporting CAFA removal should be disregarded because Midwest has not provided detailed data, records, and statistical calculations to the degree of certainty necessary to prove that actual damages exceed $5 million.  A removing defendant, however, is under no obligation to prove plaintiff's damages. *See Lopez*, 427 F. Supp. 3d at 1236; *see also Gonzalez v. Comenity Cap. Bank*, No. 1:19-CV-00342-AWI-EPG, 2019 WL 5304924, at *4 (E.D. Cal. Oct. 21, 2019) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." (alterations in original) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)).

Contrary to Plaintiff's assertions, Midwest is not required to support removal with production of expansive business records and precise statistical calculations to prove or disprove liability and/or damages with respect to Plaintiff or the putative class members during the early stages of litigation.  *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018).  Nor are removing defendants required to "conduct a fact-specific inquiry into whether the rights of each and every potential class member were violated" and provide resulting exact data, as "defendants cannot be expected to try the case themselves for purposes of establishing jurisdiction[.]" *Bryan v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2009 WL 440485, at *3 (N.D. Cal. Feb. 23, 2009).

Ultimately, Midwest need only "demonstrate that it is *more likely than not* that CAFA's amount in controversy requirement is met."  *Sanchez*, 102 F.3d at 404. Indeed, where Midwest "file[s] a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdiction threshold' removal is appropriate." *Dart*, 574 U.S. at 88 (internal citations omitted).

While the Court "*may* require parties to submit summary judgment-type evidence relevant to the amount in controversy," parties are not obligated to do so at

- 13 -

the point of removal.  *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotations omitted; emphasis added).  Moreover, a declaration from a defendant is considered "summary judgment-type evidence" that can adequately serve as a basis for invoking the court's subject matter jurisdiction.  *See Ibarra*, 775 F.3d at 1197; *see also* Fed. R. Civ. P. 56(c)(1)(a).  The standard is not, as Plaintiff suggest, one that essentially requires a level of inspection and calculation that would be approved by a paid, expert statistician.  Midwest filed a declaration with its notice of removal, which is "summary judgment-type evidence" and all that is required to substantiate removal allegations.  (*See* Declaration of Timm Sturgeon ("Sturgeon Decl.") in Support of Midwest's Notice of Removal (ECF No. 1-9).)

CAFA was enacted by Congress to provide a broad grant of federal jurisdiction over class actions.  CAFA modified the federal removal statutes to create more lenient removal requirements because of an express policy decision to have federal courts be the forum for class actions of the type here.  S. Rep. No. 109-14 at 29, 43 (2005) (noting that CAFA "is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"); *see also Ibarra*, 775 F.3d at 1197 ("Congress intended CAFA to be interpreted expansively.").  In enacting CAFA, Congress counseled federal courts as follows: "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case.'"  S. Rep. No. 109-14 at 42.

The Court should not have any uncertainty about its jurisdiction over this case given that Midwest has submitted "summary judgment-type" evidence establishing the amount in controversy exceeds $5 million by a preponderance of the evidence.

///

- 14 -

Should the Court, however, have any uncertainty, CAFA requires erring in favor of exercising jurisdiction.

> **2.     Plaintiff Alleged No Facts Limiting the Scope or the Frequency of the Alleged Legal Violations, and Thus Midwest's Assumed Violation Rates Are Appropriate.**

In an attempt to avoid removal while at the same time alleging the biggest potential class with the most possible exposure, Plaintiff's Complaint[2] pleads all his claims in a very broad, generalized way.  Plaintiff describes Midwest's conduct as a "company-wide policy and practice" of failing to provide compliant meal and rest periods, pay all minimum and overtime wages, maintain proper records, reimburse for necessary business expenses, compensate for the reasonable value of services rendered, and for engaging in unfair business practices.  (Compl., ¶ 22.)  Both Plaintiff and the entire class of over 1,000 current and former employees were subject to these alleged violations.  (*Id.*)  Indeed, the Complaint asserts that Midwest employed "systematic policies and practices" that violate the California Labor Code. (*Id.*, ¶ 1.)  The Complaint also alleges that Midwest had a "consistent and uniform policy, practice, and/or procedure of willfully failing to comply" with relevant portions of the Labor Code and followed a "pattern, practice, and uniform administration of enterprise-wide policies and practices regarding illegal and improper compensation" that entitles "Plaintiff and the Class Members" to recovery. (*Id.*, ¶¶ 23, 32.) (*See also id.*, ¶ 8 ("[Defendant's] policies, practices, and customs have resulted in violations of the California Labor Code"), ¶ 13 ("Plaintiff has been victimized by the policies, practices, and customs of Defendant"), ¶ 31 (alleging "A

---

[2] As noted above, jurisdiction is generally "analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Weight v. Active Network, Inc.*, 29 F. Supp. 3d 1289, 1292 (S.D. Cal. 2014) (quoting *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006)).  The court may only rely on an amended complaint to the extent it clarifies the original; it may not solely rely on an amended complaint to determine if removal was appropriate in the first instance. *Id.*



practice or policy of not paying one additional hour of pay"), ¶ 117 (alleging a "pattern and practice" of failing to provide compliant meal periods).)  It is clear from these allegations that Plaintiff is not alleging just sporadic, inadvertent legal violations.  Instead, he is alleging calculated, systematic policies and practices purposefully aimed at denying wages, overtime pay, breaks, and wage statement information to Plaintiff and all members of the putative class.  (*Id.*, ¶ 25.)

Throughout his Motion, Plaintiff ignores the fact that he pled these claimed legal violations in such a broad way.  He has challenged Midwest's assumed violation rates and suggests lower violation rates may be possible, but that is not what Plaintiff pled in his *original* Complaint.  Plaintiff pled the maximum, most extensive violations possible for all putative class members.  And when evaluating the amount in controversy, the defendant and the court must assume that the allegations of the complaint are true, and that liability will be proven.  *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010).

In light of what Plaintiff actually pled in his *original* Complaint, it is wholly improper for Plaintiff to challenge the violation rates used by Midwest, which are fully supported by the allegations, and any attempt thereafter to limit the jurisdictional scope of his Complaint must be disregarded.  (*See* Mot. at 15 (citing to qualifying words in the *amended* Complaint in an attempt to narrow the scope of the *original* Complaint).)  Midwest's assumed violation rates are appropriate based specifically on Plaintiff's own allegations, and those rates are well within the spectrum allowed by law.  It is Plaintiff's obligation to allege specific facts that would narrow the scope of the putative class or the damages sought in order to avoid removal.  *See Harrington v. Mattel, Inc.*, No. C07-05110 MJJ, 2007 WL 4556920, at *4 n.4 (N.D. Cal. Dec. 20, 2007) (finding that plaintiff's complaint did not make allegations "that otherwise cabin the range or scope of damages and other relief he seeks" so defendants were entitled to factor in amounts for additional recovery not stated in the complaint).  Plaintiff has not exercised any restraint in his Complaint,

1   presumably for the purpose of alleging the largest class possible in order to obtain

2   the largest judgment possible.  Thus, Plaintiff is stuck with the assumptions that flow

3   from such broad and sweeping allegations for purposes of analyzing removal.

4        There is ample authority that the Court, in assuming Plaintiff's allegations of

5   broad, uniform, and systematic wage abuse are true, is entitled to assume a 100%

6   violation rate.[3]  In fact, in *Duberry v. J. Crew Grp., Inc.,* No. 2:14-CV-08810-SVW-

7   MRW, 2015 WL 4575018, at *3–5 (C.D. Cal. July 28, 2015), the Central District

8   interpreted similar sweeping allegations and found that the plaintiff's claims in that

9   case were similar to allegations that other courts have found sufficient to support an

10  assumed 100% violation rate.

11       It is also important to note that while Plaintiff's Motion takes issue with

12  Midwest's assumed violation rates, Plaintiff offers "no alternative."  *Navarro v.*

13  *Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14,

14  2008).  At best, Plaintiff argues that a reduced violation rate is more appropriate based

15  on amended allegations.  (*See* Mot. at 15–16.)  But amended allegations alone are

16  insufficient to disrupt a violation rate tethered to sweeping allegations at the time of

17  removal and grounded in reasonable evidence.  *See Ibarra*, 775 F.3d at 1199 (plaintiff

18  "contested the assumption, but did not assert an alternative violation rate grounded

19  in real evidence"); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-

20

21       [3] *See LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200, 1202 (9th Cir.
22  2015) (removing defendant could assume a 100% violation rate where plaintiff had
    alleged that the violation occurred to "all" members of the putative class); *Holcomb*,
23  424 F. Supp. 3d at 844 ("[I]t is reasonable to assume a 100% violation rate if the
    complaint specifically alleges a uniform practice." (citation and internal quotations
24  omitted)); *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal.
25  2016) (explaining that a 100% violation rate is justified where "uniform" practice
    allegations are lodged and plaintiff offers no competent evidence in rebuttal, but
26  defendant need not produce extensive business records to "prove the amount in
    controversy to a legal certainty"); *Bernal*, 2020 WL 8461559, at *4 ("When a
27  complaint alleges "uniform" violations, it might be reasonable to assume a 100%
    violation rate if "the plaintiff offers no competent evidence in rebuttal."); *Bridges*,
28  2020 WL 4937505, at *2 (same).

- 17 -

SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (plaintiff "does not contest these assumptions' accuracy – instead he only contests the sufficiency of Defendants' evidentiary support.  Notably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation."); *Dobbs*, 201 F. Supp. 3d at 1188–89 ("plaintiff offers no competent evidence in rebuttal to defendant's showing" of a 100% violation rate).  Ultimately, remand must be denied because Plaintiff provides no evidence suggesting that the actual amount in controversy is less than $5 million.  *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017) (denying remand where "Plaintiffs d[id] not sufficiently contest Defendant's allegation because they never contend that they are putting an amount lower than $5 million at issue and d[id] not offer any conflicting evidence that calls Defendant's estimates into question—they simply question the strength of Defendant's supporting declaration.").

### 3. The Law Permits Midwest to Base Removal on Reasonable Estimates of the Amount in Controversy.

Midwest has more than carried its burden by providing a good faith, reliable estimate of the amount in controversy that far exceeds the required $5 million threshold.  *See Behrazfar v. UNISYS Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (defendant's good faith estimates upon which the amount in controversy calculations were based were sufficient to establish jurisdiction minimum); *Jimenez v. Allstate Ins. Co.*, No. CV 10-8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (calculations of defendant's human resources employee were sufficient to establish amount in controversy without the need for submission of underlying records); *see also Terrell v. Samuel*, Son & Co. (USA), No. EDCV20-00587-JGB-(KKx), 2020 WL 2797299, at *4 (C.D. Cal. May 29, 2020) ("[Defendant] need not submit evidence that categorically excludes all possible alternative explanations for damages. Instead, [it] need only establish some reasonable grounds for removal." (citing *Arias*, 936 F.3d at 925)).  Defendants

seeking removal are entitled to utilize estimates, assumptions, and extrapolations in calculating the potential liability for the amount in controversy for the putative class, so long as they are reasonable and made in good faith. *See LaCross*, 775 F.3d at 1202–03; *Ibarra*, 775 F.3d at 1199; *Oda v. Gucci Am., Inc.,* No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (accepting reasonable assumptions based on the complaint and generalized employment data and stating that a defendant "is not required to comb through its records to identify and calculate the exact frequency of violations").

Contrary to what Plaintiff claims in his Motion, there is no authority suggesting that Midwest is required to provide precise calculations or turn over all of its data to support removal. In addition to Plaintiff's own broad and sweeping allegations that alleged a "uniform" and "systematic" pattern of wage abuse that took place throughout the class period and applied to all putative class members (Compl., ¶¶ 8, 13, 22–23, 25, 31–32, 117), a declaration from a person with knowledge of the relevant data is sufficient. *Scott*, 2021 WL 677897, at *5. Indeed, even where "Defendant could certainly have provided more data to back up the . . . declaration" there is still no requirement that the defendant "include specific figures." *Ruano v. Sears Roebuck & Co*., No. CV 15-6060-PSG (FFMx), 2015 WL 6758130, at *4 (C.D. Cal. Nov. 5, 2015). Midwest has provided more than sufficient evidence to meet the low threshold of establishing that it is more likely than not that the amount in controversy exceeds the jurisdictional limits by submitting a detailed declaration of Timm Sturgeon, Midwest's President, Secretary, and Treasurer, which laid the foundation for its Notice of Removal and established an amount in controversy range of $10,252,598.69–$14,746,679.95. (*See generally* Sturgeon Decl.) And now, in a show of good faith, Midwest has provided even more evidentiary support through a supplemental declaration of Timm Sturgeon explaining in further detail his review of the company's records and the methods he used to generate his calculations. (*See generally* Suppl. Sturgeon Decl.) This supplemental declaration, which includes

- 19 -

supporting company records and data samples, far exceeds the evidentiary burden required to clear CAFA's amount in controversy hurdle.

Plaintiff devotes much of his Motion to attacking Sturgeon's statistical bona fides and the variables upon which he relies to generate is estimations. But, Sturgeon's statistical qualifications aside, estimates and assumptions like the ones used here are routinely relied upon and approved by courts in the Ninth Circuit based on similar evidence.[4] The fact that Midwest could, in theory, and given adequate time and resources, access more precise data or figures, does nothing to impose a heightened evidentiary burden on it. *See Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) ("While it is true, as Plaintiff objects, that Defendants have in their possession records that would allow a more precise calculation of the average time lost per week, requiring Defendants to produce this information would amount to requiring them to prove up Plaintiff's case on the merits.").

Both the original and supplemental declarations of Timm Sturgeon and the allegations in the Complaint fully support Midwest's informed assumptions in its removal calculations, and completely undermine Plaintiff's unsupported arguments.

///

///

///

///

---

[4] *See, e.g.*, *Marano*, 2021 WL 129930, at *3 (denying remand based on unpaid overtime calculations reached by multiplying average weekly unpaid overtime by total eligible work weeks); *Leos v. Fed. Exp. Corp.*, No. 2:14-CV-02864-ODW, 2014 WL 2586866, at *7 (C.D. Cal. June 10, 2014) (approving the amount in controversy calculations which utilized estimated average wage rates and average hours per day times the number of members of the putative class); *Stevenson v. Dollar Tree Stores, Inc.,* No. CIV S-11-1433 KJM, 2011 WL 4928753, at *5 (E.D. Cal. Oct. 17, 2011) (approving use of hourly wage average and average hours worked in calculating the amount in controversy, particularly in light of plaintiff's vague and unspecific allegations).



DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA

**C.    Midwest Adequately Established in Its Notice of Removal That the Amount in Controversy for the Putative Class Exceeds $5 Million.**

**1.    Midwest's Meal and Rest Break Removal Calculations Are Supported by Plaintiff's Allegations and Extrinsic Evidence.**

Plaintiff alleges that Midwest "failed to provide Plaintiff and the Class with duty-free, uninterrupted meal" and rest periods, and that he and the class are entitled to one hour of premium pay for each and every one of these violations.  (Compl., ¶¶ 101, 103, 108 111.)  These violations, Plaintiff claims, were the result of Midwest's "systematic policies and practices" in which it "implemented a scheduling policy that prohibited Plaintiff and the Class from receiving [compliant] meal periods . . . as well as [compliant] 10-minute rest periods." (*Id.*, ¶¶ 1, 3.)  (*See also id.*, ¶ 8 (alleging that Midwest's "policies, practices, and customs have resulted in violations of the California Labor Code.").)

Based on these sweeping allegations in the Complaint, it was not speculative for Midwest to interpret Plaintiff's Complaint to mean what it says: that putative class members were routinely and systematically *prohibited* from receiving compliant meal and rest breaks.  *See Branch v. PM Realty Group, L.P.*, 647 F. Appx. 743, 746 (9th Cir. 2016) (where plaintiff alleges that "failure to provide meal and rest breaks in a manner consistent with California law flows from policies that applied 'uniformly' to all putative class members" a violation rate of at least 4 missed breaks per week "is, at a minimum, reasonable.").

Even though Plaintiff's Complaint alleges that putative class members were routinely prevented from taking compliant meal and rest breaks (supporting a 100% violation rate), Midwest nevertheless calculated the amount in controversy using both a 100% violation rate and an alternative 25% violation rate, the most conservative of the rates generally accepted. *See Bernal*, 2020 WL 8461559, at *4.  These violation rates yielded penalties between $2,396,843.33 (100% violation rate) and $599,210.83 (25% violation rate) for meal break violations, and the same range of penalties for rest break violations.  (*See* Not. of Removal at 14–15, ECF No. 1.).

- 21 -

Midwest calculated these rates using an average hourly pay of $22.16, multiplied by the total number of workdays, 108,160.80. As Sturgeon's supplemental declaration explains, the $22.14 weighted average hourly rate was calculated using the total number of recorded work hours for each potential class member from August 14, 2015 to September 6, 2019 and multiplied by each potential class member's hourly rate, then divided by the total number or recorded work hours. (Suppl. Sturgeon Decl., ¶ 11.) The number of workdays was calculated using a random sample of 100 timecards consisting of 25 timecards from each of the preceding four years. (*Id.*, ¶ 10.) Because of the manner in which Midwest's employee data and records are stored, it would have been exceedingly burdensome to extract more than 100 timecards. (*Id.*, ¶ 9.) Thus, based on Sturgeon's experience within the company and his thorough review of as many relevant records and data that could reasonably be obtained, the figures used to calculate meal and rest break penalties were reasonable and more than sufficient to satisfy Midwest's evidentiary burden. *See Anderson*, 2020 WL 7779015, at *3 (explaining that it is unnecessary to "perform detailed mathematical calculations to determine whether the defendant has established the jurisdictional amount.").

### 2.    Midwest's Removal Calculations on Unpaid Overtime Are Proper.

Plaintiff alleges that "[a]s a pattern and practice, Defendant regularly failed to provide Plaintiff and the Class meal periods where they were relieved for their work duties[] . . . [and] automatically deducted 30 minutes from the total hours worked by Plaintiff and the Class." (Compl., ¶ 123.) As a result, Plaintiff and class members performed off-the-clock work and were not compensated for all hours worked, including overtime. (*Id.*)

Midwest's estimates used to calculate the amount in controversy for Plaintiff's overtime claims are reasonable given the sweeping allegations in the Complaint. By taking Plaintiff's allegations to be true at the time of removal, an assumed daily

- 22 -

violation rate is entirely justified.[5]  And Plaintiff offers no allegations or evidence to indicate that this assumption is unreasonable.  *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (noting plaintiff's lack of refuting evidence).

Plaintiff's reliance on cases like *Ray v. Nordstrom Inc.*, No. 2:11-CV-07277-JHN, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9, 2011) and *Nolan v. Kayo Oil Co.*, No. C 11-00707 MEJ, 2011 WL 2650973, at *4 (N.D. Cal. July 6, 2011), are unavailing.  *Ray* was decided under the outdated "legal certainty" standard that was overruled by *Rodriguez v. AT & T Mobility Serv. LLC*, 728 F.3d 975 (9th Cir. 2013).  And, in *Ray*, the court found that allegations that the defendant failed to pay all employees "at least *some* regular and overtime hours" did not support an assumption of one hour of missed regular pay and one hour of missed overtime pay per pay period.  Similarly, *Nolan* is contradicted by cases finding that allegations of overtime worked by the plaintiff are sufficient to apply a similar overtime rate to the class at large.  *See, e.g.*, *Wilson v. Best Buy Co.*, Inc., No. 2:10-cv-3136-GEB-KJN, 2011 WL 445848, at *2 (E. D. Cal. Feb. 8, 2011).  Here, there is no indication that there is only "some" missed overtime.  To the contrary, Plaintiff has worded his Complaint broadly and alleged a "pattern and practice" of abuse.  Midwest is entitled to rely on those allegations and a review of generalized employment data to reasonably estimate the amount in controversy regarding Plaintiff's overtime claim.  (*See* Suppl. Sturgeon Decl., ¶¶ 7–14.)

///

---

[5] Even if Midwest used a substantially reduced violation rate, as Plaintiff suggests it should (Mot. at 18), the amount in controversy would still exceed $5 million.  In Midwest's Notice of Removal, Midwest estimated the amount in controversy with respect to Plaintiff's overtime claim to be $898,816.25, and has revised this number to $472,024.62 based on the supplemental declaration of Timm Sturgeon and using the assumption that only 60% of the shifts would have resulted in overtime.  Using the more refined numbers contained in the supplemental declaration of Timm Sturgeon, and the assumption that Plaintiff suggests, the amount in controversy, excluding attorneys' fees, is over $7,000,000.  Even if Midwest assumed no overtime at all, the amount in controversy would exceed $6,000,000 without attorneys' fees included.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA

### 3.    Midwest's Minimum Wage Removal Calculations Are Proper.

The Complaint alleges that Midwest engaged in a "pattern and practice" of "regularly fail[ing] to provide Plaintiff and the Class meal periods where they were relieved of their work," which, in turn, caused them to perform work off the clock during their meal periods. (Compl., ¶ 117.)  Plaintiff alleges that he and the class were not paid for that time, including compensation for minimum wages.  (*Id.*) Plaintiff and the class seek compensation for that time as well as liquidated damages in the amount equal to the wages unlawfully unpaid and interest on those damages. (*Id.*, Prayer for Relief ¶ 6.)

Midwest's minimum wage removal estimates are conservative.   Midwest assumed just 15 minutes of unpaid minimum wages per shift.  Plaintiff's Complaint alleges that all of the meal periods provided to Plaintiff and class members were non-compliant, which under Plaintiff's theory would result in at least 15 minutes of unpaid minimum wages for each employee on each workday.  Given this, and taking Plaintiff's allegations to be true, an estimate of 15 minutes of minimum wages per workday is not only reasonable, but conservative.  And Plaintiff offers no allegations or evidence to indicate that this assumption is unreasonable.  *See Rea,* 742 F.3d at 1239.

### 4.    Midwest's Waiting Time Removal Calculations Are Proper.

The Complaint alleges that Plaintiff separated from his employment with Midwest around February 2019 and was not paid all wages owed at the point of separation. (Compl., ¶ 144.)  Plaintiff further alleges that "Defendant has similarly treated the other employees whose employment with Defendant has terminated within the three years prior to the filing of th[e] complaint," and therefore owes him and all eligible putative class members waiting time penalties up to a maximum of 30 days. (*Id.*, ¶ 145–49.)  Indeed, Plaintiff filed this lawsuit expressly to recover the wages that are allegedly unpaid.

///

Based on a thorough review of records produced in Midwest's data management system, Crystal Report Writer, Midwest determined that at least 720 potential class members ceased working for Midwest between August 14, 2016 and August 14, 2019 and had not renewed employment with the company for at least 30 days within the filing of the Complaint. (*Id.*, ¶ 13.)  The average workday for these class members was at least 8 hours per day. (*Id.*)  Therefore, by multiplying the number of former employees (720) by the average hourly rate ($22.16) by the average workday (8 hours) by the maximum penalty period (30 days), the resulting waiting time penalties are $3,829,248.00.

Despite Plaintiff's contentions, a 100% violation rate at the statutory maximum 30-day penalty value is justified where, as here, the Complaint alleges that Midwest deployed a "systematic" practice that entitled all employees whose employment ended within the three-year period before the Complaint for waiting time penalties. (*Id.*, ¶¶ 1, 145.); *see, e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (affirming 100% violation rate where "Plaintiff included no limitation on the number of violations"), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding waiting time penalty assumption up to the statutory maximum justified where plaintiff failed rebut evidence or offer an alternative calculation).  Plaintiff presents no credible evidence or alternative calculation to justify a departure from Midwest's waiting time penalty calculation.

### 5.   Midwest's Wage Statement Removal Calculations Are Proper.

Plaintiff's sixth cause of action asserts that "Defendant failed to provide Plaintiff and Class members with accurate itemized statements" as required by Labor Code sections 226(a) and 1174. (Compl., ¶ 138.)  Plaintiff further alleges that these violations were "knowing and intentional" and that he and all class members are

- 25 -

entitled to penalties. (*Id.*, ¶ 140.) Under section 226, employees are entitled to a $50 penalty for an initial wage statement violation, then $100 for every violation thereafter. Cal. Lab. Code § 226(e).

Based on the language of the Complaint and the authorities outlined above, Midwest's estimates of the amounts at issue here for wage statement violations are reasonable. *See Korn*, 536 F. Supp. 2d at 1205–06 n.4 ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy is met," and holding that plaintiff cannot seek to "avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the statutory maximum."). Midwest calculated the amounts in controversy for Plaintiff's wage statement claim based on the applicable one-year statute of limitations, the number of initial paychecks and subsequent paychecks issued for hours worked, and the number of hourly, non-exempt employees who Midwest employed in California during the statutory period.[6] (*See* Not. of Removal at 18–19; Suppl. Sturgeon Decl. ¶ 14.) This calculation yields an amount in controversy for this claim of $698,800.00 (460 initial wage statements x $50 = $23,000) + (6,758 subsequent wage statements x $100 = $675,800, reduced for a $4,000 maximum for any individual employee)). Plaintiff cannot dispute this calculation.

### 6.   This Court Must Include Attorneys' Fees to Calculate the Amount in Controversy.

Even though Plaintiff's Complaint clearly states that he seeks attorneys' fees, Plaintiff argues that Midwest's projected fee amounts are inflated and unsupported. Midwest's attorneys' fees estimation is more than reasonable given that it is typical for attorneys' fees awards in California wage and hour class actions to be at least

---

[6] The initial figures used in the Notice of Removal were higher than they are here due to a calculation error, (*see* Suppl. Sturgeon Decl. ¶ 14); nonetheless, the records reviewed and methodology used to produce the penalty projections here are well within reason.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA


MEDINA McKELVEY LLP

25% of the settlement or award.[7]   Midwest makes no contention that a 25% benchmark must be automatically applied, *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 796 (9th Cir. 2018); it does note, however, that courts routinely find reasonable a 25% recovery in common fund cases.[8]

Still, if the Court requires additional support to approve a 25% fees calculation, courts in the Central District in wage and hour class actions routinely approve attorneys' fees in excess of $1,000,000 that constitute at least 25% of the settlement fund, even at the preliminary settlement approval stage.  *See, e.g.*, *In re Pep Boys Overtime Actions*, No. CV 07-1755-VBF (RZX), 2008 WL 11343369, at *2 (C.D. Cal. Nov. 12, 2008) (tentatively approving $1,750,000 attorneys' fees request, which represented 25% of potential settlement fund); *Erami v. JPMorgan Chase Bank, N.A.*, No. CV 15-7728 PSG (PLAx), 2018 WL 6133654, at *8 (C.D. Cal. Mar. 5, 2018) (preliminarily approving attorneys' fees award as high as $2,777,777.67, constituting approximately 33% of settlement fund); *Jaime v. Standard Parking Corp.*, No. CV 08-4407 AHM (RZX), 2010 WL 2757165, at *2 (C.D. Cal. July 12, 2010) (considering $1.1 million attorneys' fees request at preliminary settlement approval stage, which was 26.2% of the settlement fund).

Moreover, for purposes of removal, attorneys' fees are projected through trial, not the point of removal or even settlement.  *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002).); *accord Barbosa v. Transp. Drivers, Inc.*,

---

[7] Attorneys' fees of 25% of the total recovery is the benchmark level for reasonable attorneys' fees in class action cases.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (under the percentage method, the Ninth Circuit has established a 25% benchmark for common fund recovery); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 WL 4355903, at *5 (C.D. Cal. Sept. 29, 2017) (using attorneys' fees award of 25% of damages to calculate amount in controversy); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14 2017) (approving 25% attorneys' fees calculation).

[8] *Fritsch* itself made clear that it did "not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate."  899 F.3d at 796 n.6.

- 27 -



No. ED CV 15-1834-DMG (DTBx), 2015 WL 9272828, at *4 (C.D. Cal. Dec. 18, 2015).  Thus, even attorneys' fees awarded at settlement are conservative compared to the substantial fees that would collect if the case were to proceed to trial.

Midwest's attorneys' fees calculation is reasonable, and Plaintiff fails to show otherwise.

### 7.   Midwest Has Shown That the Amount in Controversy in the Aggregate Easily Exceeds $5 Million.

Midwest has shown by a preponderance of the evidence, through calculations supported by evidence submitted with its removal papers, that the amount in controversy here exceeds $5 million as outlined in the table below.  Plaintiff has not properly refuted any of these calculations with actual evidence or valid legal arguments.  Thus, this Court should deny the Motion based on the calculations in Midwest's Notice of Removal and as summarized below.

| Claim | Amount in Controversy |
| --- | --- |
| Unpaid Overtime | $898,816.25[9] |
| Meal Break Premiums | $599,210.83–$2,396,843.33[10] |
| Rest Break Premiums | $599,210.83–$2,396,843.33[11] |

[9] In order to calculate the amount in controversy on Plaintiff's overtime claim, Midwest assumed 15 minutes of unpaid overtime for every shift worked. *See* Notice of Removal, ¶¶ 13–14, 17.

[10] In order to calculate the amount in controversy on Plaintiff's meal break claim, Midwest assumed a range from a 25% violation rate (meaning one non-compliant meal period for every four shifts worked) on the low end and a 100% violation rate (meaning a non-compliant meal period on every shift worked) on the high end. *See* Notice of Removal, ¶¶ 13–14, 18–19.

[11] In order to calculate this range of the amount in controversy on Plaintiff's rest break claim, Midwest assumed a range from a 25% violation rate (meaning one non-compliant rest period for every four shifts worked) on the low end and a 100% violation rate (meaning a non-compliant rest period on every shift worked) on the high end. *See* Notice of Removal, ¶¶ 13–14, 20.

| Claim | Amount in Controversy |
|---|---|
| Minimum Wages | $573,793.04[12] |
| Inaccurate Wage Statements | $1,701,800.00[13] |
| Waiting Time Penalties | $3,829,248.00[14] |
| Attorneys' Fees | $2,050,519.74–$2,949,336.00[15] |
| **Total** | **$10,252,598.69–$14,746,679.95** |

**8.     Even if the Assumptions Plaintiff Suggests in His Motion Are Used, the Amount in Controversy in the Aggregate Still Exceeds $5 Million.**

In a desperate attempt to avoid removal, Plaintiff's counsel has attacked Timm Sturgeon's (Midwest's President, Secretary and Treasurer) declaration in support of removal. Plaintiff suggests Mr. Sturgeon did not fully clarify certain information in his declaration and that he should have used different assumptions for calculating total workdays, workweeks, and the average wage rate. Although Mr. Sturgeon's original declaration is accurate, fully admissible, and more than sufficient to support removal, Midwest has nonetheless submitted a supplemental declaration from Mr. Sturgeon that addresses any of Plaintiff's perceived deficiencies.[16] (*See generally* Suppl. Sturgeon Decl.)

---

[12] In order to calculate the amount in controversy on Plaintiff's minimum wage claim, Midwest assumed 15 minutes of unpaid minimum wages per workday. Midwest also included an amount for liquidated damages and for penalties under Labor Code section 1197.1. *See* Notice of Removal, ¶ 13–14, 21–23.

[13] *See* Notice of Removal, ¶¶ 13–14, 25.

[14] *See* Notice of Removal, ¶¶ 13–14, 24.

[15] To calculate attorneys' fees, Midwest assumed attorneys' fees of 25% of the total amount in controversy (at both the low end (using a 25% violation rate for meal and rest break claims) and the high end (using a 100% violation rate for the meal and rest break claims)).

[16] Midwest's submission of additional supplementary evidence in opposition to a remand motion is proper. *See Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969) (stating that "it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"); *Steele v. W.W. Grainger, Inc.*, No. 13CV895 AJB (BGS), 2013 WL 2481476, at *5 (S.D. Cal. June 10, 2013) (finding that the court could consider a supplemental declaration in

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 2:19-CV-08580 JFW-MAA

In his supplemental declaration, Mr. Sturgeon verifies the information in his prior declaration and provides alternative calculations based on the assumptions Plaintiff would like Mr. Sturgeon to make for purposes of calculating total workdays, workweeks, and the average wage rate. (Suppl. Sturgeon Decl., ¶¶ 5–14).  Mr. Sturgeon's supplemental declaration verifies that even if Plaintiff's assumptions are used the amount in controversy still far exceeds the $5 million CAFA threshold. (*Id.*).  Thus, Plaintiff's attack on Mr. Sturgeon's declaration, even if given credence, does not change the outcome.

Even using the revised calculations based on the assumptions Plaintiff proposes for calculating workweeks, workdays, and the average wage rate, the amount in controversy still exceeds $5 million significantly, as shown below:

| Claim | Amount in Controversy |
| --- | --- |
| Unpaid Overtime | $472,024.62[17] |
| Meal Break Premiums | $518,178.10[18] |
| Rest Break Premiums | $520,800.50[19] |
| Minimum Wages | $502,224.40[20] |

assessing whether the defendant had proved by a preponderance of the evidence that the amount in controversy exceeded $5 million); 28 U.S.C. § 1653.   The Court can and should consider both Ms. Wilburn's original declaration, which fully supports removal, and his supplemental declaration, which supports removal as well.

[17] In order to calculate the alternative amount in controversy on Plaintiff's overtime claim, Midwest assumed 15 minutes of unpaid overtime per shift worked and assumed that only 60% of the shifts worked would have resulted in overtime, as Plaintiff contends is appropriate. *See* Mot. at 18; *see also* Notice of Removal, ¶¶ 13–14, 17.

[18] In order to calculate the amount in controversy on Plaintiff's meal break claim using Mr. Sturgeon's supplemental declaration, Midwest assumed a 25% violation rate and only included shifts where a meal break was required.

[19] In order to calculate this range of the amount in controversy on Plaintiff's rest break claim using Mr. Sturgeon's supplemental declaration, Midwest assumed a 25% violation rate and only included shifts where a rest break was required.

[20] In order to calculate the amount in controversy on Plaintiff's minimum wage



| Claim | Amount in Controversy |
|---|---|
| Inaccurate Wage Statements | $698,800.00[21] |
| Waiting Time Penalties | $4,374,916.00[22] |
| **Total Excluding Attorneys' Fees** | **$7,086,943.62** |
| Attorneys' Fees | $1,771,735.90[23] |
| **Total** | **$8,858,679.52** |

### III.   CONCLUSION

Midwest has more than satisfied its burden to show by a preponderance of the evidence that its Notice of Removal was proper.  Using reasonable assumptions and calculations that have previously been approved by multiple courts in this District and other districts throughout the Ninth Circuit, the amount in controversy in this case exceeds the $5 million threshold.  Plaintiff attacks Midwest's Notice of Removal by seeking to impose an impossible burden on Midwest that is not authorized by the Ninth Circuit.  Despite Plaintiff's best efforts, calculating the amount in controversy cannot be transformed into an exercise in "nuclear science."  *Scott v. Cricket Commc'ns*, LLC, 865 F.3d 189, 196 (4th Cir. 2017).  For all these reasons, Plaintiff's motion to remand must be denied.

Dated:  March 22, 2021          MEDINA McKELVEY LLP
                                                 By:   */s/ Kyle W. Owen*_____
                                                        KYLE W. OWEN
                                                        Attorneys for Defendant
                                                        MIDWEST CONSTRUCTION SERVICES,
                                                        INC. dba TRILLIUM DRIVER SOLUTIONS

---

claim, Midwest assumed 15 minutes of unpaid minimum wages per workday.  Midwest also included an amount for liquidated damages and for penalties under Labor Code section 1197.1.  *See* Notice of Removal, ¶ 13–14, 21–23.

[21] *See* Notice of Removal, ¶¶ 13–14, 25.

[22] *See* Notice of Removal, ¶¶ 13–14, 24.

[23] To calculate attorneys' fees, Midwest assumed attorneys' fees of 25% of the total amount in controversy.