# EXHIBIT 1

## TO THE DECLARATION OF TATIANA G. AVAKIAN ISO PLAINTIFF'S MOTION TO REMAND

**MARLIN & SALTZMAN**

CLASS ACTIONS, MASS TORTS & CATASTROPHIC INJURIES

Tatiana G. Avakian
tavakian@marlinsaltzman.com

Stanley D. Saltzman
Alan S. Lazar

Tatiana G. Avakian
Bradley R. Fagnani
Karen Gold
Cody R. Kennedy
Stephen P. O'Dell
Corey S. Smith
Adam M. Tamburelli

October 11, 2019

Brandon R. McKelvey
Allison S. Hyatt
Timothy B. Nelson
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678

>   Re:   **Patton v. Midwest Construction Services, Inc.**
>         **United States District Court, C.D. Cal., Case No.: 2:19-cv-08580-JFW-MAA**

Dear Brandon:

      We write to meet and confer with you regarding Defendant Midwest Construction Services, Inc. dba Trillium Construction/Drivers' ("Defendant") Notice of Removal. For the reasons discussed below, we do not believe that Defendant has satisfied, by a preponderance of the evidence, the $5,000,000 amount-in-controversy requirement under the Class Action Fairness Act of 2005 ("CAFA").

**Legal Standard**

      "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted); *see Abrego Abrego v. The Down Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating System Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014). However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego*, 443 F.3d at 685.

      "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). "Under this burden, a defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). In order to demonstrate that requisite amount in controversy, parties must submit " 'summary-judgment-type evidence' relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Garcia v. Wal-Mart Stores*, 207 F. Supp. 3d 1114, 1119 (C.D. Cal. 2016).

*Patton v. Midwest Construction Services, Inc.*
October 11, 2019
Page 2

"When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5,000,000, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5,000,000, to satisfy other requirements under CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id*; see also *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Buehler v. Saddle Creek Corp.*, 2015 WL 5618871 at *2 (C.D. Cal. Sept. 23, 2015).

**<u>Defendant's Assumptions of Violation Rates Are Purely Speculative.</u>**

Although Defendant is not required to prove Plaintiff's case, it is required to demonstrate that its assumptions when calculating the amount-in-controversy are reasonable. Defendant's reliance on a 100% violation rate for Plaintiff's first, second, third, fourth, sixth, and seventh causes of action is not supported by "summary-judgment-type evidence." In *Ibarra*, the Ninth Circuit concluded that the removing defendant could not assume a 100% violation rate where the plaintiff had alleged that the defendant had a "pattern and practice" of committing wage-and-hour violations. *Ibarra*, 775 F.3d at 1198.

> A 'pattern and practice' of doing something does not necessarily mean *always* doing something. The complaint alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise. In fact, the named plaintiff Ibarra alleged that he worked overtime hours without compensation on 'multiple occasions during his employment,' suggesting that [defendant's] practices occurred several times but not on each and every shift. Because the complaint does not allege that [defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.

*Ibarra*, 775 F.3d at 1198-99.

Courts have consistently rejected the use of a 100% violation rate when calculating the amount in controversy. *See Garcia*, *supra*, 207 F. Supp. 3d at 1125 (allegations that defendant employs "uniform policies" does not support a 100% violation rate); *Townsend v. Brinderston Corp.*, 2015 WL 3970172 at *5-6 (C.D. Cal. June 30, 2015) (finding that plaintiff's general allegations of a defendant's unlawful "policy or practice" failed to support a 100% violation rate); *Amaya v. Consolidated Container Company, LP*, 2015 WL 4574909 at *1 (C.D. Cal. July 28, 2015) ("[t]herefore, a defendant cannot assume a 100% violation rate based on the plaintiff's general allegation of a 'pattern and practice' "); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1129 (C.D. Cal. 2010) (concluding that cases allowing defendants to rely on unsupported assumptions of 100% violation rates "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction").

*Patton v. Midwest Construction Services, Inc.*
October 11, 2019
Page 3

      Judge Walter has also routinely disavowed a defendant's reliance on a 100% violation rate without evidentiary support. *See Quinones v. Atria Management Company, LLC, et al.*, 2:19-cv-03704-JFW (C.D. Cal. July 8, 2019) (the Court found that defendants' use of a 100% violation rate for waiting time penalties and wage statement penalties was speculative and unsupported by evidence, where defendants relied on allegations in the complaint that defendants maintained a "pattern and practice" of not providing compliant meal and rest periods and instructed plaintiff and the class to "never take rest breaks"); *Davis v. Barney's, Inc., et al.*, Case No. 2:18-cv-06627-JFW-SK (C.D. Cal. Oct. 11, 2018) (the Court rejected the use of a 100% violation rate for wage statement penalties, finding that defendant's assumption was conclusory, speculative, and insufficient to establish the amount in controversy); *Hernandez v. Starbucks Corporation, et al.*, Case No. 2:17-cv-03150-JFW-SK (C.D. Cal. July 12, 2017) (concluding that allegations that defendants maintained a "uniform administration of corporate policy" and a "pattern and practice" of wage and hour violations did not support defendants' speculative assumption of a 100% violation rate for plaintiff's meal period claim); *Rosales v. Staples Contract & Commercial, Inc., et al.*, 5:15-cv-00949-JFW-DTB (C.D. Cal. July 27, 2015) (citing to several cases in the Ninth Circuit that rejected the use of a 100% violation rate, the Court found that defendant's use of a 100% violation rate was without evidentiary support and inappropriate).

      There are no allegations in Plaintiff's complaint, and Defendant cites to none in its notice of removal, that state Defendant committed <u>each and every</u> wage-and-hour violation alleged against Plaintiff and the putative Class on <u>each and every</u> workday during the class period. Plaintiff alleges that Defendant "implemented a scheduling policy" that made it difficult for Plaintiff and the Class to receive compliant meal and rest periods. (Complaint, ¶¶3, 52). Further, Plaintiff alleges that Defendant's "policies, practices, and customs" resulted in wage-and-hour violations, as alleged in the complaint. *Id.*, ¶¶8, 13, 31; *see also Id.*, ¶22-23, 32. As the case law in the Ninth Circuit shows, allegations of "pattern and practice" or uniformly administering policies of wage-and-hour violations as set forth in the present complaint do not find that the use of 100% violation rate is reasonable.

      The complaint includes several allegations to suggest that violations <u>did not</u> occur on a daily basis. Plaintiff alleges that "Plaintiff and members of the Class ***were often not*** authorized or permitted to take off-duty, uninterrupted, 30-minute meal breaks within the first five hours of their shifts…" *Id.*, ¶41 (Emphasis added). Similarly, "Plaintiff and members of the Class ***were often not*** authorized or permitted by their supervisors to take an uninterrupted, 10-minute rest break per four hours worked or fraction thereof…" *Id.*, ¶44. "Often" connotes that there were occasions when Plaintiff and the Class <u>did</u> receive compliant meal periods. Plaintiff also specifically states that "***on those occasions when*** Plaintiff and the Class did not receive their meal periods within the first five periods," they were instructed to record meal periods within the first five hours of work. *Id.*, ¶53 (Emphasis added). Similarly, Plaintiff alleges that "***on those occasions when*** Plaintiff and the Class did not receive duty-free uninterrupted meal periods," they were not paid one hour of pay at the regular rate of compensation. *Id.*, ¶55. These allegations suggest that there were occasions when Plaintiff and the Class received compliant meal periods.

*Patton v. Midwest Construction Services, Inc.*
October 11, 2019
Page 4

  Further, as it relates to Defendant's scheduling policy, Plaintiff alleges that "<u>when</u> Plaintiff and the Class worked in the ports, they would be delayed waiting in line at the port to pick up loads," thus resulting in noncompliant meal periods. *Id.*, ¶¶51, 77 (Emphasis added). Plaintiff does not allege that he and the Class worked in the ports on every workday. Further, Plaintiff does not allege that on each and every occasion when he and the Class worked in the ports, they did not receive compliant meal periods. Plaintiff further alleges that "[<u>w</u>]<u>hen</u> Plaintiff and the Class were <u>required to remain</u> in the trucks until the items in the trucks were unloaded by those receiving the loads, Plaintiff and the Class were not authorized lunch periods." *Id.*, ¶¶52, 78 (Emphasis added). As with the previous allegation, this suggests that it was only on those occasions when Plaintiff and the Class were instructed to remain in the trucks during unloading that they were not authorized lunch periods. Plaintiff does not allege that, on every workday, he and the Class remained in the trucks during unloading, or that he and the Class were instructed by Defendant to remain in the trucks on every single work day.

  Moreover, allegations regarding the automatic deduction policy merely suggest that there were occasions when Plaintiff and the Class did not receive compliant meal periods and, on those occasions, Defendant deducted 30 minutes from their total time worked. It also suggests that there were occasions when Plaintiff and the Class received compliant meal periods and 30 minutes was deducted from their total time worked, which would not result in a violation of the Labor Code. Therefore, to infer a 100% violation rate from these allegations about the automatic deduction policy is unreasonable and unsupported by evidence.

  Additionally, Plaintiff does not allege that he and the Class were eligible for overtime on every shift that they worked. Instead, Plaintiff alleges that he "*typically* worked in excess of 8 hours per day and/or 40 hours per week because Plaintiff *typically* worked shifts of approximately 10.5 hours." *Id.*, ¶68 (Emphasis added). "Typically" does not mean every time.

  Further, Defendant's alternative violation rate of 25% for the meal and rest period claims is without evidentiary support. The alternative calculations demonstrate that Defendant's assumptions are not reasonable. *See Ibarra*, 775 F.3d at 1199, n.3 (defendant's use of varying violation rates was without any evidentiary explanation). Further, simply because Defendant assumed less than a 100% violation rate does not mean Defendant's calculations are reasonably supported. *See Page v. Luxottica Retail North America, Inc.*, 2015 WL 966201 at *4 (E.D. Cal. Mar. 4, 2015) (court found that simply because a defendant "could have assumed a higher amount does not make their estimate any less speculative.").

  Defendant's failure to satisfy its burden of showing that its assumptions are based in "real evidence" is particularly egregious where Defendant has access to the employment and payroll records to provide more accurate figures of the violation rates. *See Smith v. Diamond Resorts Mgmt.*, 2016 WL 356020 at *3 (C.D. Cal. Jan. 29, 2016) ("The Court is unpersuaded by such cases [supporting assumptions of one hour of overtime pay per week] primarily because '[a]s the employer, Defendant[s] ha[ve] access to employment and payroll records that would allow [them] to provide more accurate figures,' rather than mere estimations"); *Amoche v. Guarantee Trust Life Insurance Company*, 556 F.3d 41, 51 (1st Cir. 2009) (in ruling on motions to remand, the court may consider "which party has better access to the relevant information").

Accordingly, Defendant has failed to meet its burden that the assumptions made regarding the violation rates for the various wage-and-hour claims are reasonable.

**<u>Defendant Relies on Generalized, Conclusory Statements in Mr. Sturgeon's Declaration.</u>**

Mr. Sturgeon's declaration contains conclusory statements with respect to the approximate figures for the total class size, recorded hours, hourly rate, pay periods, and wage statements, but fails to provide any "summary-judgment-type evidence" as to why the assumptions on which Defendant relies for its calculations are reasonable. For example, Mr. Sturgeon's declaration provides no evidence as to why the use of a 100% or 25% violation rate are reasonable in this case.

Courts have routinely found that similar declarations are insufficient to satisfy a removing defendant's burden. *See Davis*, 2:18-cv-06627-JFW-SK (Judge Walter found that "[t]he unsupported and conclusory statements in [defendant's Senior Vice President of Finance's] declarations are insufficient to establish that the amount in controversy exceeds $5 million"); *Contreras v. J.R. Simplot Co.*, 2017 WL 4457228 at *3 (E.D. Cal. Oct. 5, 2017) ("A defendant's amount in controversy calculation is unjustified where the only evidence the defendant provides is 'a declaration by [its] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages"); *Garcia*, 207 F. Supp. 2d at 1121 (the Court found that the senior regional asset protection manager's declaration in support of the notice of removal was conclusory as it only set forth the approximate number of employees in the putative class, the approximate number of those who left defendant's employment, and the approximate number of wage statements that the putative class received); *Garibay*, 539 Fed. Appx. at 764 (9th Cir. 2013) (rejecting calculation of amount in controversy where only evidence provided was "a declaration by [defendants' supervisor of payroll], which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages").

Mr. Sturgeon's declaration also inflates several figures on which Defendant relies for its calculations. For example, paragraph 7 of Mr. Sturgeon's declaration provides that Midwest's Crystal Report Writer system reports disclose "the number of recorded hours." However, elsewhere in the declaration and in the notice of removal, Defendant states that the 865,286.40 figure reflects "hours worked." This is problematic, given that "recorded hours" can include vacation time, sick time, and other forms of time off that would not reflect "hours worked." Accordingly, the 108,160.8 figure for "workdays" is inaccurate as it is based on the 865,286.40 figure. Likewise, because Defendant relies on this inaccurate figure for the number of "workdays," the average hourly rate that Defendant calculates is also inaccurate. These inaccuracies affect the total damages and penalties calculated and therefore, cannot be relied upon when calculating the amount-in-controversy.

In addition, without providing evidence, Defendant assumes that the average number of hours worked by the putative class is eight per day. Nowhere in Mr. Sturgeon's declaration does it say that the reports from the Crystal Report Writer system show that the average number of hours worked per putative class members was eight per day. Mr. Sturgeon does not state that he reviewed payroll and time records to derive this average. Particularly where Defendant states in

*Patton v. Midwest Construction Services, Inc.*
October 11, 2019
Page 6

its notice for removal that the putative class held temporary assignments, it is likely that many putative class members worked part-time and may have worked shifts less than eight hours. Defendant provides no evidence to distinguish between part-time and full-time employees and whether or not the average number of hours worked per day by the putative class is affected by the number of part-time and full-time employees. Further, without any reasonable basis, Defendant calculates waiting time penalties by using the same 8-hour shift.

Moreover, for purposes of the waiting time penalties claim, Defendant relies on erroneous information regarding the total former employees eligible for penalties. While the notice of removal recognizes that the statute of limitations for the claim is three years, from August 14, 2016, Mr. Sturgeon's declaration calculates a total putative class size of 720 class members during a 4-year period (from August 14, 2015). Defendant then uses this figure in calculating waiting time penalties, thus increasing the total potential waiting time penalties.

Additionally, when calculating the meal and rest period claims, Defendant does not provide the total number of eligible meal and rest period shifts (shifts greater than 5 hours, and shifts greater than 3.5 hours, respectively). There is also no information provided in Mr. Sturgeon's declaration as to whether or not the Crystal Report Writer system provides information about the total number of shifts. This information is critical to calculating premium payments under Labor Code § 226.7. If an employee works a shift of 5 hour or less, they are not eligible for a meal period and therefore, not eligible for premium payments. Likewise, if an employee works a shift of 3.5 hours or less, they are not eligible for rest periods or premium payments in lieu of receiving compliant rest periods. Therefore, Defendant's reliance on the total number of "recorded hours" for calculating workdays for purposes of premium payments under Labor Code § 226.7 is improper under the law and lacks reasonable basis. This failure to distinguish between eligible and non-eligible meal and rest period shifts provides further support to Plaintiff's position that the 100% violation rate Defendant uses is not reasonable. Although Defendant is "permitted to draw reasonable inferences from the complaint and from evidence," they are "not permitted to pull potential violation rates out of thin air." *Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, at *2 (N.D. Cal. Feb. 24, 2017).

Defendant also provides no evidence that calculating unpaid overtime and minimum wages at 0.25 hours each per workday per putative class member is reasonable. As set forth above, the allegations in the complaint do not support this calculation, and nowhere in the complaint does Plaintiff allege that each putative class member for each workday did not receive 0.25 hours of unpaid overtime and 0.25 hours of unpaid minimum wages. Further, for the reasons set forth above, the figures used to calculate unpaid overtime and minimum wages as set forth in Mr. Sturgeon's declaration are inaccurate. Therefore, Defendant has failed to provide evidence to support that its assumptions are reasonable.

**Defendant's Calculation of Attorneys' Fees at 25% of the Common Fund Is Without Reason.**

Defendant asserts that the attorneys' fees should be calculated at 25% of the total amount in controversy, or between $2,050,519.74 and $2,949,336.00, without providing any reasonable basis. " 'The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence.' " *Arias v. Residence Inn by Marriott*, -- F.3d -- (9th

*Patton v. Midwest Construction Services, Inc.*
October 11, 2019
Page 7

Cir. 2019), citing to *Fritsch v. Swift Transportation Co.*, 899 F.3d 785, 788 (9th Cir. 2018). The Ninth Circuit concluded that there is no per se 25% benchmark rate for attorneys' fees when calculating the amount in controversy for CAFA. *See Fritsch*, 899 F.3d at 796 ("we reject [defendant's] argument that we should hold that, as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery…[T]he defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence…").

Further, Defendant improperly calculates attorneys' fees on claims where attorneys' fees are not recoverable. For example, Defendant calculates attorneys' fees on Plaintiff's meal and rest period claims. *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1248 (2012) concluded that Labor Code § 218.5 does not authorize attorneys' fees for section 226.7 claims alleging the failure to provide statutorily mandated meal and rest periods. Therefore, there is no reasonable basis for the inflated attorneys' fees amount.

**Conclusion**

For the reasons set forth above, Defendant did not meet its burden that the amount-in-controversy exceeds $5,000,000 and that the estimate of damages in controversy is a reasonable one. Therefore, please let us know if Defendant intends to withdraw its notice of removal and stipulate to remand.

Please also let us know whether you are available on <u>Tuesday, August 15, 2019, at 10:00 a.m.</u> for a telephonic meet and confer call, pursuant to L.R. 7-3, to discuss Plaintiff's intended motion to remand. Otherwise, please provide us with your availability for next week.

Very truly yours,

**MARLIN & SALTZMAN, LLP**

Tatiana G. Avakian
Attorney at Law

cc: Joseph Tojarieh, Esq.