# EXHIBIT 3

## TO THE DECLARATION OF TATIANA G. AVAKIAN ISO PLAINTIFF'S MOTION TO REMAND

**MARLIN & SALTZMAN**

CLASS ACTIONS, MASS TORTS & CATASTROPHIC INJURIES

Tatiana G. Avakian
tavakian@marlinsaltzman.com

Stanley D. Saltzman
Alan S. Lazar

Tatiana G. Avakian
Aaron D. Boal
Karen I. Gold
Joel M. Gordon
Cody R. Kennedy
Marissa A. Mayhood
Stephen P. O'Dell
Corey S. Smith

February 17, 2021

Brandon R. McKelvey
Allison S. Hyatt
Timothy B. Nelson
MEDINA McKELVEY LLP
983 Reserve Drive
Roseville, CA 95678

Re: **Patton v. Midwest Construction Services, Inc.**
**United States District Court, C.D. Cal., Case No.: 2:19-cv-08580-JFW-MAA**

Dear Tim:

We write to further meet and confer with you regarding Defendant Midwest Construction Services, Inc. dba Trillium Construction/Drivers' ("Defendant") Notice of Removal and Supplemental Declaration of Tim Sturgeon. We have received and reviewed Mr. Sturgeon's supplemental declaration. Although the supplemental declaration corrects certain issues, it creates a host of new concerns, as it is based on evidence that is neither reasonable nor competent, it still miscalculates some variables, and fails to address our previous concerns of competent evidence to support a violation, at any rate. We cannot help but note that in this Supplemental Declaration, Mr. Sturgeon has dramatically changed his prior sworn testimony, yet he still cannot establish that even his newly discovered numbers (which have been drastically reduced from the prior numbers to which he attested) are any more reasonably arrived at than the prior numbers he has now revoked. For the reasons discussed below, we do not believe that Defendant has satisfied, by a preponderance of the evidence, the $5,000,000 amount-in-controversy requirement under the Class Action Fairness Act of 2005 ("CAFA").

## I. Legal Standard

A defendant's good faith allegation that the amount-in-controversy exceeds the jurisdiction threshold will suffice unless challenged; however, if challenged, Defendant bears the burden of proving the propriety of federal court jurisdiction by "a preponderance of the evidence." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553-55 (2014) ("[e]vidence establishing the amount is required"). Under this burden, a defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). In a removal jurisdictional dispute, the defendant has not only "the burden to put forward evidence showing that the amount in controversy exceeds $5 million," but also the burden "to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra v. Manheim Invs., Inc.*,

*Patton v. Midwest Construction Services, Inc.*
February 17, 2021
Page 2

775 F.3d 1193, 1197 (9th Cir. 2015). "While a defendant's assumptions need not be proven, they **must** "have 'some *reasonable ground* underlying them.' " *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1198-99; emphasis added.)

Most recently, the Ninth Circuit has discussed the different standards a defendant must meet regarding the amount-in-controversy under CAFA, depending on whether the jurisdictional attack is "facial" or "factual" in nature. For a "facial" attack, the Court accepts the allegations as true, and draws reasonable inferences in defendant's favor, when " 'determin[ing] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.' " *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) When a "facial attack" is asserted, the defendant does not need to provide evidentiary submissions to support its assumptions, but needs to provide "plausible allegations of jurisdictional elements." *Salter*, 974 F.3d at 964 (citing *Ibarra*, 775 F.3d at 1197; *Arias*, 936 F.3d at 922.)

In contrast, a "factual attack" challenges the truth of the factual allegations regarding the amount in controversy. *Salter*, 974 F.3d at 964. "When a <u>factual attack</u> is mounted, the responding party 'must support her jurisdictional allegations with 'competent proof' ... under the same evidentiary standard that governs in the summary judgment context.' " *Id.* (citing *Leite*, 749 F.3d at 1121; underline added); *see also Harris v. KMI Industrial, Inc.*, 980 F. 3d 694, 700 (9th Cir. 2020) ("[a] factual attack … need only challenge the truth of the defendant's jurisdictional allegations ***by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence***; emphasis added.)

Plaintiff's allegations in the forthcoming motion to remand, and as set forth herein, will assert various "factual attacks" regarding Defendant's calculations of the CAFA amount-in-controversy. Thus, Defendant must provide "competent evidence" to support its assumptions in reaching the jurisdictional amount, which Defendant has failed to do, here. As discussed further below, even with the Sturgeon supplemental declaration, Defendant still has failed to meet its strict burden of producing competent evidence in support of its amount-in-controversy calculations.

II. **Defendant's Assumptions Lack "Reasonable Ground," and Are Unsupported by "Competent Evidence"**

Defendant has presented no "competent evidence," as it is required to do, and relies on the same type of evidence that courts in the Ninth Circuit have consistently found lacking in satisfying the preponderance of evidence burden. Although, "[d]efendant does not need to comb the record for exact frequency of violation" it still must satisfy its burden to provide "competent evidence." *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, *3 (C.D. Cal. May 15, 2015); *Salter*, 974 F.3d 959 at 964.

A. **Unreliability of the "Sample" of 100 Timesheets**

"Even when statistical methods such as sampling are appropriate, due concern for the parties' rights requires that they be employed with caution." *Duran v. U.S. Bank National Assn.*, 59 Cal.4th 1, 41 (2014); see *Santos v. TWC Administration LLC*, 2014 WL 12558009, at *7 (C.D. Cal. August 4, 2014) (The court held percentages based on sample was unreliable where expert "did not explain the methodology he used to select the particular wage statements he

*Patton v. Midwest Construction Services, Inc.*
February 17, 2021
Page 3

reviewed, why they constitute a representative sample, or why they provide a reliable basis for extrapolation.") Despite Defendant's attempt to cure previous "factual attacks," by declaring to a "random" sampling of 100 timesheets (or 418 workdays), the information extrapolated from these results, and therefore any calculations for the assumed 100% violation rates, is unreliable, for the following reasons:

- Defendant has failed to present any evidence that Mr. Sturgeon, or anyone else involved in selecting and reviewing this "survey" of 100 timesheets, is qualified as an expert to conduct a survey.
- Sturgeon's supplemental declaration fails to address how the sampling of 100 timesheets was selected (i.e., whether the sampling is a true "random" sample).
- The supplemental declaration does not state how many putative class members fall within the sample.
- It is unknown whether the sample reflects each year within the class period, and the number of Defendant's customers to which the putative class in the sample were assigned to work.
- There is neither a stated confidence level, nor a margin of error, established.

Therefore, using 100 timesheets and extrapolating this data to calculate damages for **all** putative class members, is faulty and unreasonable. The so-called survey is nothing more than a collection of weak anecdotal evidence, of no use in creating class wide estimates of any values.

**B.     Defendant's Unreliable Evidence Fails to Support a Reasonable Chain of Inferences for the 100% Violation Rates**

As described in our October 11, 2019 meet and confer letter, and even after Defendant's attempt to cure the deficiencies, Defendant offers no rationale to support a 100% violation rate set forth in Defendant's Notice of Removal. The Ninth Circuit disfavors utilization of a 100% violation rate to calculate the putative class' monetary recovery as "not grounded in **real evidence**," and does not permit violation rates pulled out of thin air. *Ibarra*, 775 F.3d at 1199 (emphasis added); *see also Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, at *2 (N.D. Cal. Feb. 24, 2017).

Plaintiff's allegations considered in totality do not support Defendant's theory. Plaintiff's allegations of a "pattern and practice" of not providing meal periods and rest periods, and not compensating for all wages earned, does not mean that the Class suffered such violations on every single shift that they worked. First Amended Complaint "FAC"), ¶¶ 21, 30, 118, 124); *see also Garcia v. Wal-Mart Stores*, 207 F. Supp. 3d 1114, 1125 (C.D. Cal. 2016) (allegations that defendant employs "uniform policies" does not support a 100% violation rate.) Indeed, " 'a pattern and practice' of doing something does not necessarily mean always doing something." *Ibarra*, 775 F.3d at 1198-99. Similarly, the words "often" and "on occasion when" denote that the meal and rest period, and unpaid wages, violations did not occur every single time. FAC ¶¶ 40, 43, 52, 54-56. Moreover, allegations regarding an "automatic deduction policy" do not suggest there is a 100% violation rate for meal periods; it merely suggests that, Defendant deducted 30 minutes for a meal period for each eligible shift, regardless of whether a compliant meal break was provided. *Id*. ¶¶ 53, 68, 118, 124. In other words, putative class members may have received meal periods on certain occasions, and a 30-minute meal period was deducted on those occasions. Further, Plaintiff alleges that Defendant implemented a scheduling policy that

*Patton v. Midwest Construction Services, Inc.*
February 17, 2021
Page 4

"made it difficult" for Plaintiff and the putative Class to receive compliant meal and rest breaks. *Id*., ¶¶ 3, 51, 69, 77. To assume a 100% violation rate based on this allegation would be to improperly conflate the meaning of "difficult" with "impossible." Defendant's failure to consider these allegations – and its lack of "competent evidence" – calls into question the reasonableness of its assumption of a 100% violation rate.

Additionally, Defendant calculates unpaid overtime at a 100% violation rate, even though the Sturgeon supplemental declaration provides that, based on the 100 sample timesheets, only 60.5% of the shifts are eligible for overtime (i.e., greater than 8 hours in length.) *See Harris*, 980 F.3d at 698, 700-702, fn.3 (the Ninth Circuit held that, notwithstanding being provided the opportunity to introduce evidence vis-à-vis a supplemental declaration, defendant still failed to provide the required competent evidence to support its jurisdictional allegations where plaintiff presented several "factual" attacks, including that defendant's assumptions were unreasonable and inflated, for failure to provide information about the eligibility of meal periods, rest periods, and overtime.)

Nor does Defendant cite to a single allegation in the FAC to support its calculations of a 100% violation rate for the waiting time penalties and inaccurate wage statements. *See Arias*, 936 F.3d at 926-27 (where the Court discussed that an assumption of a 100% violation rate for inaccurate wage statements "*may* prove to be reasonable" where the complaint stated that "[n]ot one of the paystubs that Plaintiffs received complied with Labor Code § 226 …") (emphasis added.) Plaintiff's FAC does not allege that all former employees are owed unpaid wages for the maximum 30 days, nor does the FAC allege that every single wage statement was inaccurate.

Further, a general declaration, such as the one provided by Defendant, that sets forth the number of employees, number of workweeks, and general information about hourly wages has been deemed insufficient to satisfy a defendant's burden when a defendant makes unreasonable assumptions, based on such a declaration alone, regarding the number of violations. *See Garibay v. Archstone Communities LLC,* 539 Fed. Appx. 763, 764 (9th Cir. 2013); *Page v. Luxottica Retail N. Am. Inc.*, 2015 WL 966201, at *4 (E.D. Cal. Mar. 4, 2015) ("Courts have been skeptical of high CAFA estimates that rely solely on declarations with non-specific human resource data."); *Ornelas v. Children's Place Retail Stores, Inc.,* 2013 WL 2468388, at *4 (C.D.Cal. June 5, 2013); *Castaneda v. Hungry Man, Inc.*, 2020 WL 2614608, at *3 (C.D. Cal., May 21, 2020) (following *Arias*, Judge Walters found that Defendant's failure to explain methods used in estimation, corroborate testimony with evidence, and address documents actually reviewed resulted in a failure to put forth "summary-judgment-type evidence" upon which it can base its amount in controversy calculations.)

Therefore, Defendant has not met the preponderance of the evidence standard.

### C. Alternatively, Should The Court Accept a 25% Violation Rate, the $5 Million Amount in Controversy Is Not Met

Simply because Defendant's alternative violation rate of 25% for claims is less than a 100% violation rate does not suggest the lowered violation rate is reasonable. *See Page,* 2015 WL 966201 at *4. However, even if the Court accepts Defendant's assumption of a 25% violation rate, Defendant still cannot prove, by a preponderance of evidence, that the amount in controversy exceeds $5 million.

*Patton v. Midwest Construction Services, Inc.*
February 17, 2021
Page 5

      Mr. Sturgeon's supplemental declaration changed three variables: wage statements, workdays, and daily hours worked, and thus, the calculation of damages in Defendant's notice of removal are incorrect. Regarding wage statements, Defendant claims the correct number is now 7,218, which is nearly a third of what Defendant previously asserted. Sturgeon Suppl. Decl. ¶ 13; *see also*, Sturgeon Decl. ¶ 11. Additionally, Defendant reduces the number of workdays from 108,160.8 to 94,670.3. Sturgeon Suppl. Decl. ¶ 9; *see also*, Sturgeon Decl. ¶ 8. Defendant's new calculations, based on these adjustments, are provided below, and fall below the $5 million threshold.

| Wage-And-Hour Claims | Calculation at 25% Violation Rate[1] |
|---|---|
| Meal Periods | $22.16 average hourly pay x 94,670.3 workdays x .25 (a 25% violation rate) = **$524,473.46** |
| Rest Periods | $22.16 average hourly pay x 94,670.3 workdays x .25 (a 25% violation rate) = **$524,473.46** |
| Overtime Wages | 94,670.3 workdays x .25 hours of overtime per workday x $22.16 average hourly pay x 1.5 x .25 (a 25% violation rate) = **$196,677.55** |
| Minimum Wage | 94,670.3 workdays x .25 hours of overtime per workday x $10.61 average minimum wage x .25 (a 25% violation rate) = **$62,778.24** |
| Liquidated Damages | Damages in an amount equal to wages unlawfully unpaid and interest thereon = **$62,778.24** |
| Waiting Time | 720 former temporary workers x $22.16 per hour x 9.14 hours per day x 30 days x .25 (a 25% violation rate) = **$1,093,728.96** |
| Wage Statements | ((460 wage statements x $50 =23,000) + (6758 wage statements x $100=675,800)) = 698,800 x .25 (a 25% violation rate) = **$174,700.00** |
| **TOTAL (without attorneys' fees)** | **$2,639,609.91** |
| Attorneys' Fees[2] | 25% of $2,639,609.91 (damages at the 25% violation rate) = |

---

[1] Plaintiff does not admit that a 25% violation rate is appropriate, at all. However, should the Court find that a 25% violation rate is reasonable, it should be applied when calculating <u>all</u> of the claims identified in Defendant's notice of removal. Although Defendant's notice of removal applies an alternative 25% violation rate to the meal and rest period claims only, because the unpaid wages claim is related to the meal period claim, a 25% violation rate should apply to the unpaid wages claim and liquidated damages claim, too. Similarly, there is no reason to extrapolate anything further than a 25% violation rate for waiting time penalties and inaccurate wage statement claims.

[2] While courts in the Ninth Circuit have considered potential attorneys' fees in calculating the amount in controversy in wage-and-hour cases, Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded. *See Campbell v. Vitran Express, Inc.*, 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

*Patton v. Midwest Construction Services, Inc.*
February 17, 2021
Page 6

|  | $659,902.48 |
|---|---|
| **TOTAL (with attorneys' fees)** | $3,299,512.39 |

      Therefore, even under Defendant's own alternative 25% violation rate, damages (including attorneys' fees) are less than the required $5 million under CAFA.

### **Conclusion**

      For the reasons set forth above, Defendant did not meet its burden that the amount-in-controversy exceeds $5,000,000 and that the estimate of damages in controversy and the violations made are reasonable, supported by "competent evidence." As discussed above, the unreliability of the significantly reduced numbers and data on which Defendant relies further supports Plaintiff's position that Defendant has failed to satisfy its burden of establishing jurisdiction. Given the above, please let us know if Defendant still plans on opposing Plaintiff's intended motion to remand, or whether it will stipulate to remand.

      Please also let us know whether you are available for a phone conference on February 19 or February 22 (after 11:00 a.m.), to meet and confer, pursuant to L.R. 7-3, regarding Plaintiff's intended motion to remand.

      Thank you for your attention to the foregoing. We look forward to discussing these issues with you further at the meet and confer.

Very truly yours,

                                            **MARLIN & SALTZMAN, LLP**

                                            Tatiana G. Avakian
                                            Attorney at Law

cc: Joseph Tojarieh, Esq.