1

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman (SBN 90058)
ssaltzman@marlinsaltzman.com
Tatiana G. Avakian (SBN 298970)
tavakian@marlinsaltzman.com
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081

2

3

4

5

6

**TOJARIEH LAW FIRM, PC**
Joseph Tojarieh, Esq. (SBN 265492)
jft@tojariehlaw.com
10250 Constellation Boulevard, Suite 100
Los Angeles, California 90067
Telephone: (310) 553-5533
Facsimile: (310) 553-5536

7

8

9

10

11

*Attorneys for Plaintiff Bryant Patton, individually and on behalf of
all others similarly situated*

12

## UNITED STATES DISTRICT COURT

13

### CENTRAL DISTRICT OF CALIFORNIA

14

15

BRYANT PATTON, individually, and on
behalf of all others similarly situated,

16

Plaintiff,

17

v.

18

19

MIDWEST CONSTRUCTION
SERVICES, INC. dba TRILLIUM
CONSTRUCTION/DRIVERS, a
California corporation; and DOES 1
through 100, inclusive,

20

21

22

Defendant.

23

24

25

26

27

28

Case No. 2:19-cv-08580-JFW-MAA

<u>CLASS ACTION</u>

[Assigned for all purposes to the Hon.
John F. Walter, Courtroom 7A]

**PLAINTIFF'S NOTICE OF
MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND
ENHANCEMENT AWARD;
MEMORANDUM OF POINTS AND
AUTHORITIES**

Hearing Date:     December 6, 2021
Time:                   1:30 p.m.
Courtroom:        7A

Date Action Filed: August 14, 2019
Trial Date: Vacated

---

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, December 6, 2021, at 1:30 p.m. or soon thereafter as may be heard in Courtroom 7A in United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, plaintiff Bryant Patton ("Plaintiff"), individually and on behalf of all others similarly situated, will and hereby does move for an order in conjunction with final approval of the settlement of this action, for: (1) an award of attorneys' fees in the total amount of $212,500.00 to Plaintiff's counsel (equal to 25% of the non-reversionary common fund established by the settlement between the Parties); (2) reimbursement of $49,576.71 in out-of-pocket expenses incurred by Plaintiff's counsel; (3) an enhancement award of $5,000.00 for Plaintiff; and (4) an award of $12,000[1] for settlement administration expenses. *These amounts have already been preliminarily approved by this Court, no class members have objected to the settlement (including the requested fees, costs and incentive award) despite adequate notice thereof, and Defendant Midwest Construction Services, Inc. dba Trillium Construction/Drivers ("Defendant" or "Trillium") does not oppose this Motion.*

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declarations of Stanley D. Saltzman, Tatiana G. Avakian, Joseph Tojarieh, Bryant Patton, and Mary Butler, submitted herewith, the pleadings, papers and records on file in this case, all matters of which this Court may take judicial notice, and such other documents and any oral argument or other matter

---

[1] As set forth in footnote 1 of Plaintiff's Motion for Final Approval, there was an increase in the number of class members that were known at the time of the preliminary approval motion. As a result of this increase, the administration costs increased from the preliminarily approved amount of $12,000.00, to $13,800.00. (See Butler Decl., ¶¶ 17-19). Defendant has agreed to pay the increased cost of administration due to these additional class members. The increased amount (i.e., $1,800.00) will be paid separate from the Gross Settlement Amount. As such, the total Net Settlement Fund will not be reduced by the increase in administration costs.

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

1  that may be considered by the Court.

2       This Motion is made following the conference of counsel pursuant to L.R.

3  7-3, which took place on November 1, 2021. Pursuant to paragraph 5 of the

4  Court's Amended Standing Order, Plaintiff filed a Joint Meet and Confer

5  Statement with respect to the Parties' meet and confer efforts. (Dkt. 81).

6  Dated: November 8, 2021        **MARLIN & SALTZMAN, LLP**

7                                      **TOJARIEH LAW FIRM, PC**

8

9                             By: /s/ Stanley D. Saltzman

10                                 Stanley D. Saltzman, Esq.

11                                 Tatiana G. Avakian, Esq.

12                             *Attorneys for Plaintiff Bryant Patton,*

13                             *individually and on behalf of all others*
                               *similarly situated*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.      INTRODUCTION ....................................................................... 1

II.     SUMMARY OF CLASS COUNSEL'S EFFORTS ............................... 3

      A.      Pre-Filing Research and Investigation ............................ 3

      B.      Researching and Drafting the Complaint ....................... 3

      C.      Removal to Federal Court ............................................. 4

      D.      Written Discovery ........................................................ 4

      E.      Amended Pleadings ...................................................... 4

      F.      Mediation ..................................................................... 4

      G.      Plaintiff's Motion to Remand ....................................... 5

      H.      The Rule 26(f) Report and Subsequent Scheduling
            Updates ......................................................................... 6

      I.      Defendant's Motion for Partial Summary Judgment ...... 6

      J.      Continued Settlement Negotiations and Eventual
            Settlement ..................................................................... 7

      K.      Preliminary Approval of the Settlement ........................ 7

      L.      Efforts Related to Seeking Final Approval of the
            Settlement ..................................................................... 8

III.    THE REQUESTED ATTORNEYS' FEES ARE
      REASONABLE ............................................................................ 8

      A.      The Percentage-of-the-Fund Approach Supports the Fee
            Request ......................................................................... 8

            1.      The Results Achieved Are Extraordinary ........... 10

            2.      Class Counsel Faced Substantial Risks in
                   Accepting Plaintiff's Case on a Contingency Fee
                   Basis Following the FMCSA Determination ..................... 11

iv

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

3.     Class Counsel's Skill, Experience, and Quality of Work Support the Requested Fee Award ......................... 12

4.     Awards Made in Similar Cases Support the Request .......................................................................... 13

B.    The Lodestar Cross-Check Attests to the Reasonableness of the Negotiated Benchmark Fee Request ....................................................................... 15

IV.    PLAINTIFF'S COUNSEL SHOULD BE REIMBURSED FOR THEIR  REASONABLE AND NECESSARY LITIGATION EXPENSES .................................................... 17

V.    THE ENHANCEMENT AWARD REQUESTED ON BEHALF OF THE CLASS REPRESENTATIVE IS REASONABLE ...................................................................... 18

VI.    CONCLUSION .......................................................................... 20

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

# TABLE OF AUTHORITIES

**Cases**

*Aarons v. BMW of North America, LLC,*
    2014 WL 4090564 (C.D. Cal. 2014) ............................................................. 16

*Anderson v. Nextel Retail Stores, LLC,*
    2010 WL 11506729 (C.D. Cal. 2010) ........................................................... 16

*Barbosa v. Cargill Meat Solutions Corp.,*
    297 F.R.D. 431 (E.D. Cal. 2013) ......................................... 2, 14, 15, 16

*Bickley v. Schneider National Carrier Inc.,*
    2016 WL 69102614 (N.D. Cal. 2016) ...................................................... 14, 15

*Blum v. Stenson,*
    465 U.S. 886 (1984) ..................................................................................... 16

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ....................................................................................... 9

*Burden v. SelectQuote Ins. Servs.,*
    2013 WL 3988771 (N.D. Cal. 2013) .............................................................. 15

*Campbell v. PricewaterhouseCoopers,*
    2015 WL 11182689 (E.D. Cal. 2015) ............................................................ 14

*Emmons v. Quest Diagnostics Clinical Laboratories, Inc.,*
    2017 WL 749018 (E.D. Cal. 2017) ................................................................. 16

*Garcia v. Gordon Trucking, Inc.,*
    2012 WL 5364575 (E.D. Cal. 2012) .............................................................. 13

*Glass v. UBS Financial Services, Inc.,*
    2007 WL 221862 (N.D. Cal. 2007) ............................................................... 20

*Guippone v. BH S & B Holdings, LLC,*
    2011 WL 5148650 (S.D.N.Y. 2011) ............................................................... 19

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ............................................................................. 18

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) .............................................................. 14

*In re Bluetooth Headset Products Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ......................................................................... 16

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

*In re Consumer Privacy Cases*,
   175 Cal.App.4th 545 (Cal. Ct. App. 2009) ............................................................ 13

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. 2005) ................................................... 10, 12, 13

*In re Linerboard Antitrust Litigation*,
   2004 WL 1221350 (E.D. Pa. 2004) ........................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................... 14

*In re Omnivision Technologies, Inc.*,
   559 F.Supp.2d 1036 (N.D. Cal. 2008) ............................................... 2, 10

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................ 14

*In re Rite Aid Corp. Secs. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ....................................................................... 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................................ 8

*Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*,
   986 F.3d 841 (9th Cir. 2021) ........................................................................ 2

*Kearney v. Hyundai Motor America*,
   2013 WL 3287996 (C.D. Cal. 2013) ......................................................... 16

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. 2009) ........................................................... 10

*Kress v. PricewaterhouseCoopers*,
   2016 WL 10956530 (E.D. Cal. 2016) ....................................................... 14

*Lee v. JPMorgan Chase & Co.*,
   2015 WL 12711659 (C.D. Cal. 2015) ....................................................... 14

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. 1997) ........................................................... 14

*Lusby v. GameStop Inc.*,
   2015 WL 1501095 (N.D. Cal. 2015) ......................................................... 15

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ................................................................... 16

*Multi–Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. 2009) ......................................................... 13

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

*Paul, Johnson, Alston & Hunt v. Gaulty*,
    886 F.2d 268 (9th Cir. 1989)............................................................................9

*Richard v. Ameri-Force Mgmt. Servs., Inc.*,
    No. 37-2008-00096019 (San Diego Sup. Ct 2010).............................................16

*Romero v. Producers Dairy Foods, Inc.*,
    2007 WL 3492841 (E.D. Cal. 2007) ..........................................................10, 13

*Ross v. U.S. Bank Nat. Ass'n*,
    2010 WL 3833922 (N.D. Cal. 2010) ...............................................................19

*Schaffer v. Litton Loan Servicing, LP*,
    2012 WL 10274679, at *20 (C.D. Cal. Nov. 13, 2012)......................................19

*Singer v. Becton Dickinson and Co.*,
    2010 WL 2196104 (S.D. Cal. 2010) ................................................................14

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .........................................................................9

*Stevens v. Safeway Inc.*,
    2008 WL 11496497 (C.D. Cal. 2008)...............................................................20

*Stuart v. Radioshack Corp.*,
    2010 WL 3155645 (N.D. Cal. 2010) ................................................................14

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...........................................................................9

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .....................................................................8, 10

*Waldbuesser v. Northrop Grumman Corp.*,
    2017 WL 9614818 (C.D. Cal. 2017)................................................................14

*York v. Starbucks Corporation*,
    2013 WL 12113220 (C.D. Cal. 2013)...............................................................19


**Rules**

Fed. R. Civ. Proc. 23................................................................................................12

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

**Regulations**

California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers,
    83 Fed. Reg. 67,470 (Dec. 28, 2018) ............................................................ 1, 12

**Other Authorities**

4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed.2007) ............... 10

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Representative plaintiff Bryant Patton ("Plaintiff") brought this risky class action in an effort to secure important workplace protections, and to obtain compensation for: (i) unpaid time he and the class members spent working for defendant Midwest Construction Services, Inc. dba Trillium Construction/Drivers ("Defendant" or "Trillium"), (ii) alleged violations of California's meal and rest break laws, and (iii) unreimbursed expenses incurred while working for Defendant. While Plaintiff's operative complaint includes allegations of systematic policies, practices and procedures that violate several of California's wage and hour laws, Plaintiff's claims focused primarily on Defendant's alleged violations of California's meal and rest period laws. (*See* Dkt. 27).

Shortly **before** Plaintiff filed this action, the Federal Motor Carrier Safety Administration ("FMCSA") issued a highly controversial determination that California's meal and rest break laws – critical to this litigation – are preempted by the Federal Hours of Service ("HOS") regulations (the "Determination"). (California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed. Reg. 67470 (Dec. 28, 2018)). The Determination was working its way thorough the Ninth Circuit Court of Appeals when Plaintiff filed the current action. (*See International Brotherhood of Teamsters, Local 2785 v. Federal Motion Carrier Safety Administration*, Ninth Circuit Court of Appeals, Case No. 19-70323, petition filed on February 6, 2019). In fact, counsel for the Plaintiff herein was pursuing one of the three related Petitions for Review of the FMCSA Order in the Ninth Circuit, on behalf of another client/truck driver.

Counsel for Plaintiff filed the current action under the good-faith belief that the Determination was incorrect, and ultimately would not withstand scrutiny in the Ninth Circuit. Thus, since inception of this case, there has been a very real risk

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

that Plaintiff could recover little to nothing from Defendant, but Plaintiff's counsel was nevertheless willing to invest the time and money necessary to fully prosecute Plaintiff's and the putative class members' claims.

Over a year into this litigation, the Ninth Circuit upheld the Determination. (*Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841 (9th Cir. 2021)). Defendant then filed its Motion for Partial Summary Judgment on Plaintiff's meal and rest break claims ("Partial MSJ"), which this Court granted shortly thereafter, thus significantly reducing the settlement value of this case, and rendering the ***$850,000 non-reversionary*** and ***non-claims made*** settlement achieved by Plaintiff and his counsel on behalf of the 1,397 participating settlement class members all the more remarkable.

Having obtained valuable relief for the class in the face of incredible uncertainty, Plaintiff seeks an award of fees in the Ninth Circuit benchmark amount of ***twenty-five percent (25%) of the total settlement fund ($850,000), which equals $212,500***. (*See In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. 2013)). The requested fees are fair, reasonable, and appropriate under the Common Fund Doctrine in light of the favorable results obtained, the complexities of the case, and the contingent risk assumed by class counsel. Moreover, the percentage requested: ***(i) has already been preliminarily approved by this Court, and no class member has objected to it, (ii) is consistent with this Circuit's benchmark attorneys' fees percentage, (iii) is the same as or less than numerous fee awards in similar wage and hour class actions, and (iv) passes the lodestar cross-check test.*** (*See* Dkt. 78, at p. 10).

Plaintiff's counsel also seeks reimbursement of their ***reasonable and necessary out-of-pocket litigation expenses in the amount of $49,576.71 and settlement administration costs of $12,000.00***, both of which have also already

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

been reviewed and preliminarily approved by this Court, and to which no class members have objected.

Finally, Plaintiff seeks *an enhancement award in the amount of $5,000.00* to compensate him for prosecuting this action, undertaking the reputational risks associated therewith, and assisting class counsel throughout the pendency of this case. This amount is not only reasonable, but has also already been preliminarily approved by the Court, and having received no objections thereto, should be awarded upon final approval of the pending settlement.

## II.    SUMMARY OF CLASS COUNSEL'S EFFORTS

### A. Pre-Filing Research and Investigation

As a part of Plaintiff's pre-filing investigation, Class counsel's investigation included time spent researching critical legal issues, analyzing the controlling law (and the ever-changing status thereof), and reviewing documents. (Saltzman Decl., ¶ 31, Ex. 3).

### B. Researching and Drafting the Complaint

After completing an initial investigation, Plaintiff's counsel conducted further in-depth research, as needed, to draft the Complaint. (Saltzman Decl., ¶ 31, Ex. 3). On August 14, 2019, Plaintiff filed his Complaint in the Los Angeles Superior Court on behalf of a class of truck drivers who worked in California. (Dkt. 1, Ex. 1). Plaintiff's Complaint asserted various violations of the California Labor Code, with the crux of Plaintiff's claims arising from Defendant's alleged illegal meal and rest break policies and practices. (*See id.*). Plaintiff's original Complaint contained the following causes of action: (1) Failure to Provide Meal Breaks (Labor Code §§ 226.7, 512, and Wage Order); (2) Failure to Provide Rest Breaks (Labor Code §§ 226.7 and Wage Order); (3) Failure to Pay Minimum Wages (Labor Code §§ 1194, 1197 and Wage Order); (4) Failure to Pay Overtime Wages (Labor Code §§ 510, 1194, 1198 and Wage Order); (5) Failure to

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

Reimburse for Necessary Business Expenses (Labor Code § 2802); (6) Failure to Provide Adequate Wage Statements (Labor Code §§ 226, 226.3, 1174); (7) Waiting Time Penalties (Labor Code §§ 201-203); (8) Unfair Competition (Bus. & Prof. Code § 17200 *et seq.*); and (9) Quantum Merit/Unjust Enrichment. (*Id.*).

### C. Removal to Federal Court

On October 4, 2019, Defendant filed a Notice of Removal, removing this case from the Los Angeles Superior Court to the District Court for the Central District of California. (Dkt. 1).

### D. Written Discovery

On November 4, 2019, Plaintiff served written discovery on Defendant, consisting of: (i) twenty (20) interrogatories seeking detailed information about Defendant and its operations, and (ii) seventy-nine (79) categories of relevant documents. (*See* Saltzman Decl., ¶ 6). The Parties also exchanged their Rule 26 Initial Disclosures. (*Id.*, ¶ 32, Ex. 3, at p. 2).

### E. Amended Pleadings

On December 3, 2019, the parties filed a Stipulation for Leave to File First Amended Complaint (Dkt. 25), which was approved by the Court shortly thereafter. (Dkt. 26). The First Amended Complaint contains the same causes of action as the original Complaint, but added a Private Attorney General Act ("PAGA") cause of action. (Dkt. 27).

### F. Mediation

On December 12, 2019, the Parties filed a Joint Stipulation to Stay Case Pending Mediation and Decision Regarding FMCSA Preemption ("Stipulation to Stay"), asking the Court to stay this action until after the Ninth Circuit ruled on the Determination and/or after the Parties completed mediation. (Dkt. 29). The Court granted the Parties' request shortly thereafter. (Dkt. 30).

On May 5, 2020, Defendant produced documents in preparation for mediation, including hundreds of pages of critical company documents such as

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

Defendant's meal and rest break policies and related documents, the employee handbook, and detailed class member time and pay records. (Saltzman Decl., ¶ 9). Overall, the breadth of discovery, both formal and informal, permitted class counsel to spend a considerable amount of time performing a thorough and detailed analysis of the viability of certification, as well as an evaluation of the merits of the claims and Defendant's defenses, and Defendant's potential exposure for damages in this litigation. (*Id.*).

Prior to mediation, Plaintiff's counsel researched and drafted a 17-page single spaced confidential mediation brief, setting forth a detailed analysis of Plaintiff's claims, including: (i) the legal and factual basis for each cause of action, (ii) a detailed damages analysis, and (iii) an in-depth legal analysis of the FMSCA Determination, and the likelihood that it would be overruled by the Ninth Circuit on the then-pending appeal. (*See* Saltzman Decl., ¶ 9).

Armed with the data provided by Defendant and the comprehensive legal analysis performed by Plaintiff's counsel, on May 27, 2020, the parties participated in a full-day mediation before the highly-regarded wage and hour class action mediator Francis "Tripper" Ortman, Esq., but were unable to reach an agreement at that time. (Saltzman Decl., ¶ 10).

**G. Plaintiff's Motion to Remand**

Following their unsuccessful mediation, the Parties held multiple meet-and-confer conferences over the course of several months in preparation for filing: (i) a Joint Statement Re: Local Rule 7-3 Conferences, and (ii) Plaintiff's anticipated Motion to Remand. These meet-and-confer efforts were extensive. (*See* Dkt. 33).

On March 12, 2021, Plaintiff filed his Motion to Remand Case to Los Angeles Superior Court (Dkt. 34). Included with this filing was a 16-page detailed analysis by an expert hired by Plaintiff to opine on a statistical analysis performed by one of Defendant's employees. (Dkt. 36). Defendant filed its opposition to the

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

Motion to Remand on March 22, 2021 (Dkt. 38), and Plaintiff filed his reply on March 29, 2021. (Dkt. 43). The Motion to Remand was denied on April 9, 2021, after the Court noted that "[a]lthough the Court recognizes that Defendant's statistical analysis is somewhat flawed, the Court concludes that Defendant has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000." (Dkt. 46).

### H. The Rule 26(f) Report and Subsequent Scheduling Updates

On April 9, 2021, the Court issued an order setting a scheduling conference for May 3, 2021, and requiring the parties file a Joint Rule 26(f) Report on or before April 19, 2021. (Dkt. 47). The Parties met-and-conferred extensively to discuss the matters to be addressed in the Joint Rule 26(f) Report, and on April 19, 2021, filed a detailed 25-page report. (Dkt. 49).

On April 20, 2021, the Court: (i) vacated the scheduling conference, (ii) referred the case to private mediation, (iii) dismissed any unserved Doe defendants, (iv) scheduled a pretrial conference, and (v) set a trial date. (Dkt. 50 & 51).

### I.  Defendant's Motion for Partial Summary Judgment

On May 12, 2021, Defendant filed its Motion for Partial Summary Judgment ("Partial MSJ"), arguing that Plaintiff's meal and rest break claims (and all related derivative claims) were barred as a matter of law pursuant to the Ninth Circuit's Order upholding the Determination, and a subsequent District Court opinion (then on appeal in the Ninth Circuit) regarding retroactive application of the Determination. (Dkt. 53).

On May 15, 2021, Plaintiff filed an *ex parte* application addressing several critical scheduling issues pertaining in part to the pending Partial MSJ (Dkt. 58). The Court granted the *ex parte* in part on May 19, 2021. (Dkt. 60).

In connection with preparing the opposition to the Partial MSJ, Plaintiff's counsel retained the services of a national expert on FMCSA issues, attorney

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

Deepak Gupta of Gupta Wessler in Washington D.C., to assist with drafting the opposition. (Saltzman Decl., ¶ 17). It was Plaintiff's intention, if the motion regarding retroactivity of the FMCSA Determination was granted, to seek review before the Ninth Circuit, and thus the expertise of Mr. Gupta was sought at the earliest point in time. (*Id.*). His services were retained on a fixed fee basis at a cost of $25,000.00, and is being submitted as a cost pass-through herein. (*Id.*).

On May 24, 2021, Plaintiff filed his opposition to the MSJ (Dkt. 61), to which Defendant replied on May 28, 2021. (Dkt. 63). The Court took Defendant's Partial MSJ under submission on June 9, 2021 (Dkt. 66), and granted it (Dkt. 67).

### J.  Continued Settlement Negotiations and Eventual Settlement

Shortly thereafter, the Parties re-engaged in settlement discussions.  During this process, the Parties debated, discussed, and resolved many legal and factual issues. In particular, in moving towards the Settlement, class counsel researched the uncertainty and risks of further litigation, and the difficulties inherent in such litigation. (Saltzman Decl., ¶ 18). With the mediator's continuing efforts and the Parties' ongoing willingness to engage in negotiations, the Parties reached a settlement in principle. (Dkt. 68). The Parties then began working through the tedious task of negotiating and drafting the Settlement Agreement and the proposed Notice to Class Members. (*Id.*). Upon finalizing the settlement and notifying the Court that a settlement had been reached, all pending deadlines were stayed. (Dkt. 69).

### K. Preliminary Approval of the Settlement

Class counsel then prepared the Motion for Preliminary Approval and supporting documentation, and considered bids from and then decided on a claims administrator (with the agreement of Defendant and later approval by this Court). (*See* Saltzman Decl., ¶ 32, Ex. 3, at pp. 8 & 9). On July 19, 2021, Plaintiff filed his: (i) unopposed Motion for Preliminary Approval of Class Action and PAGA

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

Settlement ("Motion for Preliminary Approval of Settlement"), (ii) Motion for Conditional Class Certification, and (iii) extensive supporting documentation. (Dkt. 71-74). The Court granted these motions on August 9, 2021. (Dkt. 77-80).

### L. Efforts Related to Seeking Final Approval of the Settlement

Since preliminary approval, the parties have expended additional and ongoing efforts completing the tasks required to effectuate the Settlement, including working with the Settlement Administrator and finalizing the class notice. (Saltzman Decl., ¶ 32, Ex. 3, at pp. 8 & 9). In addition, class counsel has incurred further time preparing this motion and the concurrently-filed Motion for Final Approval of Class Action and PAGA Settlement ("Motion for Final Approval"). (*Id.*, ¶¶ 31-32, Ex. 3, at pp. 9). Class counsel anticipates many more hours finalizing this Settlement, including attending the final approval hearing, working with class members who need assistance, and following up on the settlement to ensure that payments due to class members occur, and actually end up with them. (Saltzman Decl., ¶ 31).

### III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In determining the amount of fees that are reasonable, the Court may award attorneys' fees – in its discretion – based on a percentage of the common fund or based on the lodestar method. (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). Here, the fees requested by class counsel are reasonable and proper under either approach.

### A.   The Percentage-of-the-Fund Approach Supports the Fee Request

The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

1    client is entitled to a reasonable attorney's fee from the fund as a whole." (*Boeing*
2    *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The "percentage-of-the-fund"
3    recovery, or "Common Fund Doctrine", provides that when a litigant's efforts
4    create a fund from which others derive benefits, the litigant may require the
5    passive beneficiaries to help compensate those who created the fund. (*See id.*). The
6    purpose of this equitable doctrine is, in part, to spread litigation costs
7    proportionally among all the beneficiaries so that the active beneficiary does not
8    bear the entire burden alone. (*See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759,
9    769 (9th Cir. 1977)).

10        Both state and federal courts in California have embraced the Common Fund
11   Doctrine. (*Id.*). Courts have consistently recognized that class action litigation is
12   necessary to protect the rights of individuals whose injuries or damages are too
13   small to justify individual actions. (*See id.*). This case is a perfect example, since
14   no one employee will have incurred sufficient damages by way of the challenged
15   policies and procedures to justify individual litigation, but banded together in a
16   proposed class action, they were able to achieve a just and fair resolution. In *Paul,*
17   *Johnson, Alston & Hunt v. Gaulty*, 886 F.2d 268, 271 (9th Cir. 1989), the Ninth
18   Circuit endorsed this principle when it stated: "it is well settled that the lawyer who
19   creates a common fund is allowed an extra reward, beyond that which he has
20   arranged with his client, so that he might share the wealth of those upon whom he
21   has conferred a benefit." Indeed, attorneys must be encouraged to incur the
22   enormous risks of time and money necessary to vindicate the public interest, and to
23   protect public policies. (*See id.*)

24        Under the percentage-of-fund approach for determining fees in common
25   fund cases, the Ninth Circuit normally begins its analysis with a 25% "benchmark"
26   for attorneys' fees. (*See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d
27   1301, 1311 (9th Cir. 1990)). However, this "benchmark" is simply a starting point.

28

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

(*Vizcaino*, 290 F.3d at 1048-50). "[I]n most common fund cases, the award exceeds that benchmark." (*In re Omnivision Technologies, Inc.*, 559 F.Supp.2d at 1047; *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. 2009)). Indeed, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." (*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D. Cal. 2007)* (citing 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed.2007)); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18, n. 12 (C.D. Cal. 2005)* (noting more than 200 federal cases have awarded fees higher than 30%)).

Here, as noted above, class counsel seek an award equal to the benchmark, even though their collective lodestar slightly exceeds the $212,500.00 which results from the application of the 25% benchmark.

When evaluating whether the percentage sought by counsel is reasonable, the Court may consider the following factors: (1) the results achieved; (2) the risks involved; (3) the skill required and quality of work by counsel; and (4) awards made in similar cases. (*Vizcaino*, 290 F.3d at 1048-1050). Each of these factors support the award sought by counsel here.

### 1.    The Results Achieved Are Extraordinary

On an elementary average payment basis, before consideration of reductions for fees, costs, etc., *the average payment per class member is $608.44*. ($850,000 divided by 1,397 class members). A more relevant and refined way to consider average payments – in order to account for the large turnover rate typical with drivers, especially in a staffing company setting – is to analyze the average payments tied to what is sometimes referred to as the number of "full time equivalent" ("FTE") employees. Analyzed this way, *the average settlement amount to be received on a "per position" basis is $6,071.43* ($850,000 divided

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

by the 140 employees typically employed by the Defendant at any given time). (Saltzman Decl., ¶ 19). Thus, any "hypothetical" employee who may have worked throughout the class period would stand to receive a gross settlement allocation of $6,071.43. (*See id.*).  Unfortunately, no such workers exist in this case, but the FTE method does reflect the value for such workers, when factoring out the high turnover rate. ***That FTE amount would equate to almost 261 hours of pay for someone who might have remained with the Defendant for the full class period.*** (*See id.*). This represents an extraordinary result for Plaintiff and the class, particularly in light of the FMCSA Determination, the Ninth Circuit's decision upholding the Determination, and Defendant's subsequent successful Partial MSJ on the primary theories of liability.

### 2. Class Counsel Faced Substantial Risks in Accepting Plaintiff's Case on a Contingency Fee Basis Following the FMCSA Determination

Large-scale employment class action litigation is generally complicated and time consuming. Any law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee recovery of any kind. The demands and risks of this type of litigation can and do often overwhelm the resources and deter participation of many traditional claimants' firms. (*See e.g. In re Washington Pub. Power Supply*, 19 F.3d at 1300-01).

But here, the risks assumed by Class counsel were even greater than those typically associated with contingency fee arrangements. First, Plaintiff and his counsel took on a company's meal and rest break policies and practices ***after*** the

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

FMCSA has already determined that California laws governing meal and rest breaks are preempted by federal law, while the petition/appeal for review was pending in the Ninth Circuit. (California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed. Reg. 67470 (Dec. 28, 2018)). Thus, in order to prevail on these key claims, the FMCSA's Determination would first have to be reversed by the Ninth Circuit Court of Appeals.

Moreover, while class counsel believes that Plaintiff's claims were well suited for certification, class counsel is cognizant of the significant hurdles they would have had to overcome in order to obtain and maintain class status under Rule 23, especially since Defendant undoubtedly would have strenuously opposed class certification. (See Fed. R. Civ. Proc. 23, *generally*).

Thus, the risks of this case were undeniably substantial and the hurdles significant. Few cases are "sure things" and this case was certainly no different. Defendant is represented by a strong firm, which aggressively defended its client, and would have continued to do so had settlement not been reached. These important risk factors weigh heavily in favor of the requested fee. (*See e.g. In re Heritage Bond Litig.*, at *20.)

### 3. Class Counsel's Skill, Experience, and Quality of Work Support the Requested Fee Award

Class counsel has an extremely well documented history of involvement in significant class actions generally, and more specifically in wage and hour class actions. (Saltzman Decl., at ¶¶ 23-30). As set forth in detail in the declaration of Stan Saltzman, the firm regularly achieves outstanding results, and the present settlement is no exception. (*See id.*). To date, the firm has been lead or co-lead counsel in class actions resulting in trial or settlement results of over $1,000,000,000.00. (*Id.* at ¶ 25). Many of said cases involved multiple layers of class counsel. Many of the largest resolutions the firm has had the privilege to

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

work on have involved cutting edge issues of first impression, and as such the firm has also been involved in over twenty appeals of class action matters. (*Id.* at ¶ 30). Finally, as set forth in detail in the Declaration of Joseph Tojarieh, the Tojarieh Law Firm is also very knowledgeable and experienced handling class action employment law disputes. (Tojarieh Decl., ¶¶ 2-6).

Indeed, Plaintiffs' counsel's skill at adapting their litigation strategies to address the challenges posed by adverse case law that continuously developed as this case proceeded, as well as the formidable defense mounted by Defendant's counsel, was critical to preparing a strong presentation of the case in anticipation of settlement, or barring settlement, trial. Thus, this factor also supports an award of the 25% benchmark.

### 4.     Awards Made in Similar Cases Support the Request

California state and federal courts have observed that under the percentage method, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." (*In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 558, n.13 (Cal. Ct. App. 2009); *Romero*, 2007 WL 3492841, at *4 (same); *see also In re Heritage Bond Litig.*, at *18, n.12 (noting more than 200 federal cases have awarded fees higher than 30%)).

Here, the request for attorneys' fees in the amount of the 25% benchmark easily falls within the range of acceptable attorneys' fees in this District and other courts within the Ninth Circuit. (*See*, *e.g.*, *Multi–Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 2009 WL 9100391, *5 (C.D. Cal. 2009)* (one-third award of the common fund based on empirical studies, an exceptional result, litigation risk, benefits to the class, and the lengthy time the litigation had been pending, which led counsel to forego other work); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, *8-10 (E.D. Cal. 2012)* (awarding

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

attorneys' fees equal to 33% of the common fund based on the "overall success, the skill with which the case was prosecuted, the substantial legal risks associated with Plaintiffs' claims, and the financial risks borne by Class Counsel"); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8-9 (S.D. Cal. 2010) (awarding fees equal to one-third of the common fund); *Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *3 (C.D. Cal. 2017) ("exceptional result achieved in this action justifies an attorney fee award of one-third of the settlement fund."); *Lee v. JPMorgan Chase & Co.*, 2015 WL 12711659, at *8-9 (C.D. Cal. 2015) (awarding 33% of $2.4 million common fund); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding 32.8% fee); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. 1997) (awarding 33.3% fee); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming 1/3 fee); *Barbosa*, 297 F.R.D. 431 at 450-51 (awarding 33.33% of the settlement fund and listing at least 5 other cases in the Eastern District where the Court awarded 33.33% of the common fund); *Bickley v. Schneider National Carrier Inc.*, Case No. 4:08-cv-05806-JSW, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (awarding 33.33% of the non-reversionary settlement fund of $28 million in wage and hour class action as attorney fees)).[2]

Notably, courts have routinely found such fee awards are appropriate in wage

---

[2] *See also Campbell v. PricewaterhouseCoopers*, Case No. 2:06-cv-02376-TLN-AC, 2015 WL 11182689, at *3 (E.D. Cal. May 8, 2015) (Docket No. 655) (awarding 40% of the settlement fund in a wage and hour class action); *Kress v. PricewaterhouseCoopers*, Case No. 2:08-CV-00965-TLN-AC, 2016 WL 10956530, at *4 (E.D. Cal. Sep. 2, 2016) (Docket No. 405) (awarding 33.33% of the settlement fund in a wage and hour class action as attorney fees); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *22-23 (S.D. Cal. 2010) (noting that the amount of 33.33% of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010)(awarding 33.33% of settlement fund in a wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits").

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

and hour class actions. (*See*, *e.g.*, *Bickley***Error! Bookmark not defined.***, 2016 WL 6910261, at \*3* (awarding 1/3 fee); *Lusby v. GameStop Inc.*, 2015 WL 1501095, at \*4 (N.D. Cal. 2015)* (granting 33% fee award and collecting cases regarding the same); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at \*5 (N.D. Cal. 2013)* (awarding 33% of fund); *Barbosa*, 297 F.R.D. at 450 (E.D. Cal. 2013)* (granting 33% fee award and collecting cases regarding the same)).

In short, Plaintiff's request for attorneys' fees in the amount of the benchmark percentage easily falls in line with awards in other wage and hour cases in this District and elsewhere. Again, this is especially so where, as here, a true common fund will be fully paid out and no claim forms are required, and thus checks will be mailed to all 1,397 settlement class members who did not opt out of the settlement class. (Saltzman Decl., ¶ 18, Ex. 1, at § XI).

All of the factors presented above would actually support an upward departure from the benchmark, but in this matter, class counsel is only seeking a relatively conservative 25% fee award.

## B.    The Lodestar Cross-Check Attests to the Reasonableness of the Negotiated Benchmark Fee Request

Plaintiffs' fee request is premised primarily on the percentage of the settlement fund methodology, which is the prevailing method in cases of this kind. However, after making that determination, this Court may also use a lodestar analysis as a final cross-check on the percentage method. (*In re Washington Pub Power Supply Sys. Sec. Litig.*, 19 F.3d at 1296-98). Where the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsels' hours. (*See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)* ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.")). The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a

15

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

reasonable hourly rate." (*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)). In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." (*Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984)).

Here, the hourly rates for Plaintiff's Counsel, Marlin & Saltzman LLP and Tojarieh Law Firm, PC, as set forth in the supporting declarations $675 for Ms. Avakian (senior associate), $375 for Ms. Mayhood (junior associate), $225 for Ms. Joseph (senior paralegal), and $625 for Mr. Tojarieh (partner)), are comparable to those approved in similar cases in California and this district. (Saltzman Decl., ¶ 33; *See, e.g., Aarons v. BMW of North America, LLC*, 2014 WL 4090564, at *16 (C.D. Cal. Apr. 29, 2014) (based on "the Court's own experience with hourly rates in the Los Angeles area" awarding rates ranging from $775 for the requested partner to $390-$630 for non-partners); *Barbosa*, 297 F.R.D. at 452 (approving fees between $280 - $720); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018, at *6-8 (E.D. Cal. Feb. 27, 2017) (approving rates between $370 to $695); *Kearney v. Hyundai Motor America*, 2013 WL 3287996, at *8-9 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys in a class action); *Richard v. Ameri-Force Mgmt. Servs., Inc.*, No. 37-2008-00096019 (San Diego Sup. Ct., August 27, 2010) ($695 to $750 an hour for partners; $495 an hour for associates); *Anderson v. Nextel Retail Stores, LLC*, 2010 WL 11506729, at *3-5 (C.D. Cal. June 30, 2010) ($655 to $750 an hour for partners; $300 to $515 an hour for associates)).

In considering reasonableness of hours worked, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." (*Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). Given the procedural history of this case (set forth in detail above), and

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

the results achieved, the total number of hours incurred (not factoring in about 50 hours Mr. Saltzman spent on this litigation,[3] as well as 50 additional hours class counsel anticipates spending to effectuate the settlement) of 502.3 hours is reasonable.

In sum, the base lodestar, consisting of reasonable rates and hours worked, is $278,502.50, **which is actually approximately 30% more than (i.e. a 30% negative multiplier of) the $212,500 in fees sought by Plaintiff's counsel**, thus confirming that the fee request is both fair and reasonable. (*See* Saltzman Decl. ¶¶ 31-36, Ex. 3; Tojarieh Decl., ¶¶ 11, Ex. 1).

## IV.   PLAINTIFF'S COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLE AND NECESSARY LITIGATION EXPENSES

Class counsel requests reimbursement of their out-of-pocket expenses incurred to prosecute this class action, which total $49,576.71, as well as $12,000.00 in settlement administration costs. Saltzman Decl. ¶ 34, Ex. 4; Tojarieh Decl., ¶ 12, Ex. 2; Butler Decl., ¶ 20, Ex. 3). This Court has already preliminarily approved these amounts, which have been disclosed to the class and no objections were filed. (Butler Decl., ¶¶ 6 & 14, Ex. 1).

The specifics of the expenses are set forth in the cost detail run attached to the declarations, and resulted primarily from: (1) hiring an expert witness to challenge Defendant's damages analysis in connection with Motion to Remand Case ($11,482.50), (2) hiring an FMCSA/federal preemption expert to assist with the Partial MSJ analysis and subsequent appeal (if needed) ($25,000 fixed fee), (3) hiring the mediator to help resolve this case ($9,000 (50% of mediator's total fee)), (4) filing fees and associated attorney's services fees (~$4,800), (5)

---

[3] While senior partner Stanley D. Saltzman was involved in the handling of the case from the start, his work was primarily supervisory and strategic, and thus he has not submitted any time in support of the motion.  Mr. Saltzman estimates that he spent approximately 50 hours total on the matter, including the full day mediation, and work on various motions.  Saltzman Decl. ¶ 31.

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

settlement administration costs ($12,000), and (6) other miscellaneous expenses directly related to this action. (Saltzman Decl. ¶ 34, Ex. 4; Tojarieh Decl., ¶ 12, Ex. 2; Butler Decl., ¶ 20, Ex. 3).

Moreover, there can be no doubt that these expenses were necessary and reasonable, particularly in light of the fact that Plaintiff's counsel would have been responsible for paying them had the parties not reached a settlement (with the lone exception of the settlement administration costs), and if the case proceeded to trial if Plaintiff did not prevail at trial. As these expenses were incidental and necessary to the effective representation of the class members, they are appropriately awarded. (*See e.g. Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)) (counsel "may recover as part of the award of attorney's fees those out-of-pocket expenses that would 'normally be charged to a fee paying client.'") (citations omitted)).

## V.    THE ENHANCEMENT AWARD REQUESTED ON BEHALF OF THE CLASS REPRESENTATIVE IS REASONABLE

Finally, Plaintiff also requests an enhancement award in the amount of $5,000. Where "the class representatives have conferred benefits on all other class members . . . they deserve to be compensated accordingly." (*In re Linerboard Antitrust Litigation*, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004)). By filing suit against Defendant, Plaintiff sought to remedy a perceived wrong and placed his own interests secondary to those of the absent class members. (Patton Decl., ¶¶ 4-6). Furthermore, Plaintiff did not just retain counsel and stand by as interested spectators, but rather, has been active in the case, including by spending time and effort to gather relevant documents and information, providing the facts and evidence necessary to prove the allegations, and discussing his employment with Class Counsel. (*Id.*; Saltzman Decl., ¶ 21).

Additionally, Plaintiff has borne a very real "reputational risk" in bringing this suit. (*See Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *7

18

1  (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation,

2  notoriety, or personal difficulties, class representatives merit recognition for

3  assuming the risk of such for the sake of absent class members.")). Courts have

4  recognized that present day employers can easily learn of such filings via the

5  internet, and rely on what they discover online when deciding to hire or when

6  evaluating them. (*See id.* at *4 (noting "the fact that a plaintiff has filed a federal

7  lawsuit is searchable on the internet and may become known to prospective

8  employers when evaluating the person.")). Thus, Plaintiff has assumed a

9  considerable reputational risk that may impact his ability to find future

10  employment. (Patton Decl., ¶ 8). Long after this action is forgotten by class

11  members, Plaintiff will run the risk of being branded "litigious" by prospective

12  employers, and may be denied future employment on that basis. (*See id.*).

13      Plaintiff willingly assumed these risks, which in turn benefited all of the

14  absent class members, who did not have to file individual lawsuits nor bear the

15  risks of payment of fees and costs. Nor do they face the risk of difficulty in finding

16  future employment. Similarly, unlike Plaintiff, class members are also not being

17  required to give a full and complete general release. (*See Schaffer v. Litton Loan*

18  *Servicing, LP*, 2012 WL 10274679, at *20 (C.D. Cal. Nov. 13, 2012) ("[C]lass

19  representatives released their actual damages claims as part of the Settlement. This

20  ["personal benefit"] factor, therefore weighs in favor of approving the incentive

21  awards.")). What's more, the enhancement sought is also reasonable because it

22  represents approximately 0.58% of the total recovery of $850,000, and reasonable

23  by reference to the sums that District Courts in California have approved in other

24  wage and hour settlements.[4]

25

26  ───────────────
4  *See*, *e.g.*, *York v. Starbucks Corporation*, 2013 WL 12113220, at *5 (C.D. Cal.
Oct. 29, 2013) (enhancement award of $10,000 in a $3 million settlement); *Ross v.*

27  *U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *3 (N.D. Cal. Sep. 29, 2010) (awards
of $20,000 each to four class representatives in a $3.5 million settlement wage and

28  hour class action); *Stevens v. Safeway Inc.*, 2008 WL 11496497, at *10-11 (C.D.

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

In sum, a modest individual enhancement award to Plaintiff of $5,000 is justified as a result of his consistent involvement in the prosecution of this matter, the risks he took on behalf of the class members, and the substantial settlement reached by the Parties. Finally, class members were advised in the Class Notice of the incentive award, yet no objections have been filed, indicating the class members' approval of the requested incentive award. (Butler Decl., ¶¶ 6 & 14, Ex. 1).

## VI.    CONCLUSION

Without any guarantee of success, Plaintiff and class counsel pursued this litigation to a successful resolution. The Settlement represents an excellent recovery for the class members, and stands as a testament to the skill and dedication of class counsel and Plaintiff. Accordingly, for the reasons set forth above and in the declarations filed herewith, Plaintiff respectfully submits that the Court should award class counsel reasonable attorney fees of 25% of the common fund, reimbursement of expenses in the amount of $49,576.71, and settlement administration costs in the amount of $12,000.00. Additionally, the Court is respectfully requested to approve an enhancement award in the amount of $5,000 to Plaintiff for stepping forward as the representative plaintiff, and in being instrumental in achieving this Settlement.

---

Cal. Feb. 25, 2008) ($20,000 and $10,000 award); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) ($25,000 incentive award in FLSA overtime wages class action).

20

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

Dated: November 8, 2021

**MARLIN & SALTZMAN, LLP**
**TOJARIEH LAW FIRM, PC**


By: /s/ Stanley D. Saltzman
       Stanley D. Saltzman, Esq.
       Tatiana G. Avakian, Esq.

*Attorney for Plaintiff and the putative Class*

PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS,
AND ENHANCEMENT AWARD

## <u>CERTIFICATE OF SERVICE</u>

I, Stanley D. Saltzman, an attorney, certify that I caused the foregoing document to be served on all counsel of record in this action via the Court's CM/ECF system on November 8, 2021.


By: *<u>/s/ Stanley D. Saltzman</u>*
Stanley D. Saltzman, Esq.

*Attorney for Plaintiff and the putative Class*

CERTIFICATE OF SERVICE